# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALEXANDRA DUGAN, an individual<br><br>Plaintiff,<br><br>v.<br><br>BOSTON DIGITAL ENTERPRISES, LLC, a Delaware Limited Liability Company, and<br><br>EXERGEN CORPORATION, a Massachusetts Corporation.<br><br>Defendants. | Case No. CIV-25-157-SLP<br><br>JURY TRIAL DEMANDED |

**Complaint**

This action concerns Defendant Boston Digital Enterprises, LLC ("**Boston Digital**") and Defendant Exergen Corporation ("**Exergen**") and their unlawful and unconsented use, alteration, and exploitation of Plaintiff's copyrighted content and copyright management information ("**CMI**") under the Digital Millenium Copyright Act ("**DMCA**"). Plaintiff, Alexandra Dugan ("**Ms. Dugan**") makes the following allegations.

1. Ms. Dugan is a professional photographer. She advertises and offers her photography to individuals and businesses through her website, her Instagram page and on her Facebook page. Ms. Dugan resides in the State of Oklahoma.

2. Upon information and belief, Exergen is a for-profit corporation organized and existing under the laws of the State of Massachusetts, with its principal place of business located at 400 Pleasant Street, Watertown, Massachusetts 02472. Exergen advertises and sells thermometers and related products on its website, located at http://www.exergen.com. Exergen has sufficient contacts with this District for the Court to exercise personal jurisdiction over it, as further alleged below.

3. Upon information and belief, Boston Digital is a for-profit limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business located at 22 Boston Wharf Road, Floor 7, Boston, MA 02210. Boston Digital advertises its marketing, business development and other services on its website located at bostondigital.com. Boston Digital Exergen has sufficient contacts with this District for the Court to exercise personal jurisdiction over it, as further alleged below.

4. This Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.00.

5. This Court also has exclusive subject matter jurisdiction pursuant to 17 U.S.C. §§ 1201 *et seq.*, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a).

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400 because a substantial part of the acts giving rise to this action occurred in this District.

## The Initial Engagement

7. Upon information and belief, Boston Digital was hired by Exergen to acquire content and digital assets (including photographs and video of Exergen's products) needed to meet Exergen's marketing, advertising and business development objectives.

8. On or around June 17, 2024, Dylan Wilson ("**Mr. Wilson**"), a representative of Boston Digital, requested that Ms. Dugan take some photographs of Exergen's products for use on Exergen's website. After that discussion, Ms. Dugan agreed to take photos of Exergen's product (a thermometer) at a photoshoot she was organizing in connection with one of her other clients.

9. On or around June 19, 2024, Ms. Dugan took the photographs requested by Mr. Wilson. As a courtesy, and because the Defendants had been referred to her by one of her clients, Ms. Dugan proposed to: (a) waive her normal sitting fee for the photoshoot, (b) discount the license fee for the photos, and (c) provide Exergen free videos from the photoshoot.

10. Each of the photos and videos taken by Ms. Dugan at the photoshoot contain perspective, orientation, positioning, lighting, and other details that are entirely original, distinctive, and unique, and thus protectable under the Copyright Act. Additionally, Ms. Dugan obtained consent and photo releases from all individuals that participated in the photo shoot.

11. On July 8, 2024, Ms. Dugan provided Mr. Wilson with a link to an online image gallery where he could view proofs of the photographs from the photo shoot (the "**Proof Gallery**").

12. The photographs in the Proof Gallery each contained a watermark with Ms. Dugan's initials "AD" as well as embedded metadata listing Ms. Dugan as the copyright owner.

13. The Proof Gallery permitted Mr. Wilson with to view a proof of each photograph from the photoshoot. It also provided Mr. Wilson with the ability to identify proofs by "starring" the related image. In this way, Mr. Wilson could "star" the photographs that Exergen wanted to license or purchase.

14. The Proof Gallery, however, did not allow him to download, copy, or modify the photographs without a numeric pin. Ms. Dugan never provided such a pin Mr. Wilson, or any other representative or agent of the Defendants. A screenshot of the download window from the Proof Gallery showing a pin to download an image is shown in Figure 1, below.


*Figure 1 - Screenshot of Proof Gallery*

15. The next day, on July 9, 2024, Mr. Wilson asked Ms. Dugan to provide high resolution of five specific photographs he had "starred" in the Proof Gallery. Mr. Wilson explained that the images were to be used for a presentation Boston Digital was giving to Exergen in connection with modifications it was proposing for Exergen's website.

16. Ms. Dugan ensured that each of those five photographs (the "**Dugan Photographs**") contained CMI consisting of a copyright notice symbol, Ms. Dugan's name "Alexandra Dugan", and embedded metadata that listed Ms. Dugan as the copyright owner.

17. On July 11, 2024, Ms. Dugan uploaded high-resolution versions of the Dugan Photographs to a separated online service she uses to deliver work product to her clients: WeTransfer. She then shared a link to the WeTransfer service with Mr. Wilson, and he downloaded the Dugan Photographs from the WeTransfer service that same day.

18. On August 13, 2024, Michelle Rico ("**Ms. Rico**"), an employee of Exergen, asked Ms. Dugan for access to the Proof Gallery. Ms. Dugan provided Ms. Rico with the requested access on August 23, 2024. The next day, Ms. Dugan reminded Ms. Rico via email that the images from the Proof Gallery were proofs, which were available for purchasing or licensing. Ms. Rico did not request a pin, and Ms. Dugan did not provide one to her.

19. On September 5, 2024, after several prior emails trying to get Exergen on a call, Ms. Dugan had a Zoom call with Ms. Rico and others at Exergen to discuss general pricing for the rights to use Ms. Dugan's photographs. After the call, Ms. Rico requested prices for the rights to specific photographs.

20. On September 9, 2024, Ms. Dugan followed up with Ms. Rico and provided Exergen with a formal quote for licensing or purchasing the rights to use her photographs.

21. Ms. Dugan followed up with Ms. Rico at Exergen again on September 16, 2024, but never received a response from Ms. Rico or anyone else at Exergen.

22. On October 2, 2024, Mr. Wilson again asked Ms. Dugan for high-resolution images of particular photographs from the Proof Gallery. Ms. Dugan extended the Proof Gallery expiration to allow Mr. Wilson to identify the images for which he wanted a high-resolution version.

23. The same day, Ms. Dugan sent Mr. Wilson another email in which she forwarded her September 9, 2024 email to Ms. Rico. Later that day, Ms. Dugan and Mr. Wilson spoke on the phone, where she stated that she had not been paid by Boston Digital or Exergen for any of the rights to any of the photographs at issue. Mr. Wilson told her that he would "ping" Exergen as he expected that Exergen was planning on using the Dugan Photographs on Exergen's website.

24. On October 10, 2024, Mr. Wilson emailed Ms. Dugan stating that he had forwarded the link to the Proof Gallery to Exergen again for review and response.

25. To this date, Ms. Dugan has not received any additional emails or responses from Exergen, Boston Digital, or any of their representatives, and she has not been paid for their use of the Dugan Photographs.

### The DMCA Violations and Copyright Infringement

26. Upon information and belief, the Defendants copied and modified the Dugan Photographs for the purpose of using them on Exergen's website, where it advertises and promotes its products. As of the date of this Complaint, two of the Dugan Photographs are posted and visible on Exergen's website.

27.     Upon information and belief, Defendants—without permission or right—copied the photograph shown below in Figure 2, removed the CMI from the image (including copyright notice in the bottom left corner of the image), cropped the image, and then posted it to the Exergen website as shown in Figure 3, below.




*Figure 2 – Ms. Dugan's Original Photograph*     *Figure 3 – Image from Exergen website*

28.     Upon information and belief, Defendants copied the second photograph shown below in Figure 4, removed the CMI from the image, cropped the image and then posted it to the Exergen website as shown in Figure 5, below.




*Figure 4 - Ms. Dugan's Original Photograph*     *Figure 5 - Image from Exergen's website*

29.     Notably, Defendants did not remove the copyright notice, which is still partially displayed in the bottom left corner of the image in Figure 5.

30.     Upon information and belief, Defendants also copied the photograph shown above in Figure 4, removed the CMI from the image, and posted it to the Exergen website so that the image displays whenever a user mouses over "Our Science & Research" in the top navigation bar, as shown in Figure 6, below.



*Figure 6 – Screenshot of Exergen Website.*

31.     Defendants' copying, modification, and use of the Dugan Photographs were for the purpose of advertising and promoting Exergen's products.

32.     Ms. Dugan did not license or otherwise authorize Defendants to reproduce, display, or distribute any of her copyrightable works, much less the Dugan Photographs, on the Exergen website.

33.     Similarly, Ms. Dugan has never given Defendants permission to modify or remove the CMI data from the Dugan Photographs.

34. Neither Exergen nor Boston Digital have paid Ms. Dugan for a license to modify, distribute, publish, or otherwise use the Dugan Photographs.

35. Neither Exergen nor Boston Digital requested authorization from Ms. Dugan to remove or alter the CMI data from the Dugan Photographs, and in any event, she did not authorize this activity.

36. Defendants intentionally removed the embedded metadata, including the copyright notice and name from the Dugan Photographs before posting and using them on the Exergen website.

37. Defendants knew, or should have known, at the time they copied and displayed the Dugan Photographs on the Exergen website that the embedded metadata, copyright notice and Ms. Dugan's name had been altered or removed.

38. Upon information and belief, Defendants' actions of removing or altering the CMI on the Dugan Photographs were done with the knowledge, intention, and with willful disregard to enable or conceal infringement of the Dugan Photographs by the Defendants.

39. Defendants' actions harmed Ms. Dugan by modifying her work without permission, failing to compensate her for work and intellectual property, and then seeking to hide their wrongful conduct by removing information that would have assisted in uncovering their unlawful acts.

40. Ms. Dugan filed applications with the U.S. Copyright Office for two of the Dugan Photographs on December 19, 2024 and for six additional Dugan Photographs on January 9, 2025.

41. Ms. Dugan has complied in all respects with the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, as amended, and all other laws and regulations governing the copyrights to the Dugan Photographs and will seek to amend this complaint to add claims for copyright infringement when the U.S. Copyright Office issues certificates of registration for the Dugan Photographs.

## Claim 1 – DMCA Violation
### Alteration of Plaintiff's Copyright Management Information
### (17 U.S.C. §§ 1201 *et seq.*)

42. Ms. Dugan repeats and realleges the allegations contained in Paragraphs 1-41 herein.

43. Ms. Dugan owns a valid copyright in the Dugan Photographs.

44. The Dugan Photographs constitute original works of authorship created by Ms. Dugan.

45. At all times relevant herein, Ms. Dugan has been and still is the owner of all copyrights in and to the Dugan Photographs and has conveyed no interest in the Dugan Photographs to any other party or to Defendants.

46. When each Dugan Photograph was viewed by Defendants in the Proof Gallery, each photo included: (a) a copyright notice in the embedded EXIF data indicating that Ms. Dugan is the copyright owner; and (b) a digital watermark comprising Ms. Dugan's initials.

47. When each Dugan Photograph was downloaded by Defendants from WeTransfer, each photo included: (a) a copyright notice in the embedded EXIF data indicating that Ms. Dugan is the copyright owner; (b) a copyright notice symbol; and (c) Ms. Dugan's name.

48. The inclusion of her copyright notice in the EXIF data, a watermark with her initials, a digital copyright notice, and Ms. Dugan's name constitutes CMI under the DMCA pursuant to 17 U.S.C. § 1202(c)(2), (3), and (7).

49. Defendants had access to, and did access the Dugan Photographs with the included CMI. Defendants then, without authorization from Ms. Dugan, removed or altered the CMI from the Dugan Photographs and uploaded the modified images to Defendant Exergen's website.

50. Upon information and belief, Defendants knowingly and with the intent to induce, enable, facilitate, or conceal infringement, intentionally removed, altered or replaced the CMI from the Dugan Photographs to conceal their activities from Plaintiff and the public in violation of 17 U.S.C. § 1202(a).

51. Upon information and belief, Defendants publicly distributed and displayed the Dugan Photographs on Exergen's website knowing that the CMI in Dugan Photographs had been removed or altered without Ms. Dugan's knowledge or permission.

52. Upon information and belief, Defendants acted in concert to copy Ms. Dugan's copyrighted material and remove or alter Ms. Dugan's CMI from the Dugan Photographs.

53. Alternatively, Defendants each acted independently to copy Ms. Dugan's copyrighted material and remove or alter Ms. Dugan's CMI from the Dugan Photographs.

54. Alternatively, Defendant Boston Digital acted as an agent of Exergen to copy Ms. Dugan's copyrighted material and remove or alter Ms. Dugan's CMI from the Dugan Photographs.

55. As a direct and proximate result of Defendants' unauthorized and wrongful conduct, Ms. Dugan has been and continues to be damaged and is entitled to remedies set forth in 17 U.S.C. § 1203 in an amount to be ascertained at trial.

56. Specifically, Ms. Dugan is entitled to and seeks actual damages pursuant to 17 U.S.C. § 1203(c)(2) for each violation.

57. In the alternative, Ms. Dugan is entitled to and seeks statutory damages pursuant to 17 U.S.C. § 1203(c)(3)(B) in the amount of $25,000.00 for each violation, in addition to the costs of litigation and attorneys' fees pursuant to 17 U.S.C. § 1203(b)(4 and 5) for each violative act by Defendants.

**WHEREFORE**, Ms. Dugan respectfully requests the Court enter judgment in its favor and against Defendants Exergen Corporation and Boston Digital Enterprises, LLC, and that the Court:

find that Defendants' unauthorized and willful conduct violates Plaintiff's rights under 17 U.S.C. § 101 et seq. of the Copyright Act;

  a. enjoin Defendants and their agents, servants, employees, heirs and assigns, and all persons and entities in concert or participation with him from: (i) infringing the Dugan Photographs in any manner; (ii) reproducing, distributing, displaying, or creating derivative works of the Dugan Photographs; and (iii) removing or altering the CMI from the Dugan Photographs;

  b. order Defendants to file and serve on Plaintiff within 30 days service of this Court's order a report, in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

c. order Defendants to deliver up for destruction all materials and copies and using the Dugan Photographs, or their copies, derivative works, imitations, or reproductions that are in Defendants' control;

d. order Defendants to account for and pay over to Plaintiff all actual damages suffered and gains, profits, and advantages for each violation of 17 U.S.C. § 1202(a) pursuant to 17 U.S.C. § 1203(c)(2) or such other amount as may be proper pursuant to 17 U.S.C. § 1203;

e. order Defendants to pay maximum statutory damages in the amount of $25,000 for each violation of 17 U.S.C. § 1202(a) pursuant to 17 U.S.C. § 1203(c)(3)(B) or such other amount as may be proper pursuant to 17 U.S.C. § 1203;

f. order Defendants to pay compensatory and punitive damages in amount to be determined by the trier of fact;

g. order Defendants to pay Plaintiff's costs, expenses, and reasonable attorneys' fees in connection with this action pursuant to 17 U.S.C. § 1203; and

h. Order such other, further, and different relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all claims and for damages.

February 4, 2025                    Respectfully Submitted,

/s/ Tynia McQuigg
Drew T. Palmer, OBA #21317
Tynia A. McQuigg, OBA #30765

Silverline Legal

PO Box 230
Oklahoma City, OK 73101
(405) 456-0076
drew@silverline.legal
tynia@silverline.legal

**Attorneys for Ms. Dugan, Plaintiff**