## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ALEXANDRA DUGAN,                          )
                                          )
      Plaintiff,                          )
                                          )
v.                                        )   Case No. CIV-25-157-SLP
                                          )
BOSTON DIGITAL ENTERPRISES,               )
LLC, a Delaware Limited Liability         )
Company; and                              )
EXERGEN CORPORATION, a                    )
Massachusetts Corporation,                )
                                          )
      Defendants.                         )

## **O R D E R**

Before the Court is Defendant Boston Digital Enterprises, LLC's Renewed Motion to Dismiss for Lack of Personal Jurisdiction (Motion) [Doc. No. 29].[1]  The matter is fully briefed.  *See* Resp. [Doc. No. 32]; Reply [Doc. No. 36]; Surreply [Doc. No. 40].  The parties have also submitted sworn declarations in support of their arguments.  *See* Am. Dec. of Charles Murphy (Murphy Declaration) [Doc. No. 30]; Dec. of Alexandra Dugan (Dugan Declaration) [Doc. No. 33].[2]  For the reasons that follow, Boston Digital Enterprises, LLC's (Boston Digital's) Motion is granted.

---

[1] Defendant Exergen Corporation's Motion to Partially Dismiss Plaintiff's First Amended Complaint and Brief in Support [Doc. No. 31] will be addressed via separate order.

[2] The Court strongly admonishes Defendant Boston Digital for its prior misrepresentation to the Court regarding the location of the photoshoot being in Oregon rather than Oklahoma.  *See* Mtn. to Dismiss for Lack of Pers. Juris. [Doc. No. 21]; Aff. of Charles Murphy [Doc. No. 22].  However, the Court will consider the facts presented in the Murphy Declaration [Doc. No. 30] to the extent they do not conflict with Plaintiff's declaration.  *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

## I.    Introduction

This action arises out of Defendants' unauthorized use of copyrighted photographs created by Plaintiff.  *See generally* Am. Compl.  [Doc. No. 25].  Plaintiff brings federal law claims against Defendants Boston Digital and Exergen Corporation (Exergen) under the Digital Millenium Copyright Act, 17 U.S.C. §§1201 *et seq.*, and the Copyright Act, 17 U.S.C. §§ 101 *et seq.*  Plaintiff also asserts several state law claims against the Defendants.

Boston Digital has moved to dismiss the claims against it for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  In its Motion, Boston Digital primarily asserts the Court cannot exercise personal jurisdiction over it because Boston Digital lacks sufficient minimum contacts with the state of Oklahoma.  *See* Mot. [Doc. No. 29] at 5-9.  Plaintiff argues the interactions of Boston Digital's employees with her are sufficient for the exercise of personal jurisdiction.  *See* Resp. [Doc. No. 32] at 7-10.

## II.    Governing Law

The plaintiff has the burden of establishing personal jurisdiction.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).  A motion to dismiss decided without an evidentiary hearing requires Plaintiff to make only a prima facie showing that jurisdiction exists.  *See id.*; *Wenz,* 55 F.3d at 1505.  Plaintiff must establish a prima facie showing with respect to each claim and each defendant.  *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020); *Newsome v. Gallacher*, 722 F.3d 1257, 1265-66 (10th Cir. 2013).  This showing can be made "through affidavits or other written materials."  *Dental Dynamics*, 946 F.3d at 1228.  Uncontroverted

allegations in the complaint are taken as true. *Wenz*, 55 F.3d at 1505. If the other side presents conflicting affidavits, factual disputes are resolved in favor of the plaintiff. *Id.* "However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Id.*

As an initial matter, the federal Copyright Act, 17 U.S.C. § 101 et seq., does not authorize nationwide service of process over Boston Digital. *See* Fed. R. Civ. P. 4(k)(1)(C); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). As such, this Court has personal jurisdiction over defendants "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A); *see also United States v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002). This exercise of jurisdiction must "not offend the due process clause of the Fourteenth Amendment." *Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). Because Oklahoma "permits the exercise of any jurisdiction that is consistent with the United States Constitution[,]" this Court's exercise of personal jurisdiction "collapses into a single due process analysis[.]" *Botefuhr*, 309 F.3d at 1271 (quotations omitted). The due process inquiry requires satisfying two elements: (1) "a defendant must have 'purposefully established minimum contacts within the forum state'" and (2) "the assertion of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Dental Dynamics*, 946 F.3d at 1229 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant's contacts with the forum may be used to establish the existence of specific or general personal jurisdiction over the defendant. *See Old Republic Ins. Co.*

3

*v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017); *OMI Holdings,* 149 F.3d at 1091-92. Because the parties do not dispute that the exercise of general personal jurisdiction over Boston Digital is improper, the Court's analysis focuses on specific personal jurisdiction.

As to specific jurisdiction, "the 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

## III.    **Factual Background**

Plaintiff Alexandra Dugan is a professional photographer who resides in the state of Oklahoma. *See* First Am. Compl. [Doc. No. 25] at ¶ 1. Boston Digital is a Delaware limited liability company, whose sole member is a Delaware corporation.[3] Boston Digital and its employees primarily operate out of Boston, Massachusetts. *See* First Am. Compl [Doc. No. 25] at ¶ 3.

In May of 2024, Exergen retained Boston Digital to, among other tasks, provide design services for Exergen's website. *See* First Am. Compl. [Doc. No. 25] at ¶ 7; Murphy Declaration [Doc. No. 30] at ¶ 5. On June 11, 2024, Rich Blumenthal (Blumenthal), an

---

[3] While the Amended Complaint does not confirm the residency of the LLC members of Boston Digital, Boston Digital has clarified in its Disclosure Statement [Doc. No. 24] that its sole member is a Delaware corporation. *See* Defendant Boston Digital Enterprises, LLC's Disclosure Statement Identifying Constituents of LLC [Doc. No. 24].

Exergen Employee, emailed two Boston Digital employees regarding a photo shoot occurring at a pediatric clinic in Edmond, Oklahoma. *See* Murphy Declaration [Doc. No. 30] at ¶ 5. Blumenthal and the owners of the pediatric clinic "agreed that it makes sense for Boston Digital to speak with [the owner's] photographer about what type of photos would be most helpful for the new Exergen website." *Id*. (quoting email attached to Murphy Declaration, *see generally* [Doc. No. 30-1]). On June 12, 2024, one of the pediatric clinic owners introduced, via email, Plaintiff to Dylan Wilson (Wilson), the Creative Director at Boston Digital, and Jim Brockman, the Vice President of Project Management at Boston Digital. *See* First Am. Compl. [Doc. No. 25] at ¶ 8; Dugan Declaration [Doc. No. 33] at ¶ 3. Brockman, Wilson, and Plaintiff exchanged emails and arranged a telephone conference for June 17, 2024 between Wilson and Plaintiff. *See* First Am. Compl. [Doc. No. 25] at ¶ 8-10; Dugan Declaration [Doc. No. 33] at ¶¶ 3-4.[4] On June 17, Wilson called Plaintiff and explained that "Defendants needed photographs of Exergen's pediatric thermometers being used in a clinical environment." *See* First Am. Compl. [Doc. No. 25] at ¶ 10; Dugan Declaration [Doc. No. 33] at ¶¶ 5-6. Plaintiff suggested taking the photographs at the photoshoot scheduled at the pediatric clinic. *See* First Am. Compl. [Doc. No. 25] at ¶ 10.

The photoshoot occurred on June 19, 2024, where Plaintiff took photos and videos as requested by Wilson. *See* First Am. Compl. [Doc. No. 25] at ¶ 12; Dugan Declaration

---

[4] The parties do not dispute that Plaintiff was located in Oklahoma and Boston Digital employees were located outside of Oklahoma during all communications. *See* Dugan Declaration [Doc. No. 33] at ¶ 16; Murphy Declaration [Doc. No. 30] at ¶ 13-15.

[Doc. No. 33] at ¶ 7.  On June 27, 2025, Plaintiff emailed Wilson regarding the photoshoot and that she would provide photo proofs to the Defendants.  *See* First Am. Compl. [Doc. No. 25] at ¶ 14.  Plaintiff provided Wilson with a link to an image gallery (the Proof Gallery) to view the photo proofs on July 8, 2024.  *See* First Am. Compl. [Doc. No. 25] at ¶ 15; Dugan Declaration [Doc. No. 33] at ¶ 8.  Each of the images in the Proof Gallery contained a watermark with Dugan's initials and "embedded metadata listing [Plaintiff] as the copyright owner."  *See* First Am. Compl. [Doc. No. 25] at ¶ 16.  The Proof Gallery provided employees of Defendants with the ability to view the images, but did not allow the employees to "download, copy, or modify the images without a numeric pin." *See* First Am. Compl. [Doc. No. 25] at ¶¶ 17-18.  On July 9, 2024, Wilson contacted Ms. Dugan and requested five high-resolution photographs of the proofs contained in the Proof Gallery (the Dugan Photographs) for use in a Boston Digital internal presentation for Exergen.  *See* First Am. Compl. [Doc. No. 25] at ¶ 19; Dugan Declaration [Doc. No. 33] at ¶ 8.  The Dugan Photographs contained copyright management information indicating it was Plaintiff's copyrighted work.  *See* First Am. Compl. [Doc. No. 25] at ¶ 20.  On July 11, 2024, Plaintiff uploaded the Dugan Photographs and videos from the photoshoot to the file-sharing service WeTransfer.  *See* First Am. Compl. [Doc. No. 25] at ¶ 21; Dugan Declaration [Doc. No. 33] at ¶ 9.  Wilson downloaded the Dugan Photographs and videos on the same day and Boston Digital employees subsequently forwarded the WeTransfer link to Exergen.  *See* First Am. Compl. [Doc. No. 25] at ¶¶ 21-22; Dugan Declaration [Doc. No. 33] at ¶ 9.

6

Plaintiff and Exergen employees communicated in August and early September regarding pricing for the rights to use the photographs.  *See* First Am. Compl. [Doc. No. 25] at ¶¶ 23-29; Dugan Declaration [Doc. No. 33] at ¶¶ 13-14.  On October 2, 2024, Plaintiff sent Mr. Wilson an email notification that the Proof Gallery was set to expire.  *See* Oct. 2, 2024 Email Thread [Doc. No. 33-7] at 1-2.  That same day, Wilson requested access to high-resolution photographs of the images contained in the Proof Gallery as well as pricing for use of the photographs.  *See* First Am. Compl. [Doc. No. 25] at ¶ 30-31; Dugan Declaration [Doc. No. 25] at 15.  Wilson indicated in a phone call with Plaintiff that same day "that he would 'ping' Exergen as he expected that Exergen was planning on using the Dugan Photographs on Exergen's website." *See* First Am. Compl.  [Doc. No. 25] at ¶ 31. On October 10, 2024, Wilson emailed Plaintiff and stated he forwarded the Proof Gallery link to employees of Exergen again.  *See id*. at ¶ 32.  Plaintiff received no further communications from employees of Boston Digital or Exergen after Wilson's October 10, 2024 email.  *See id*. at ¶ 33.  Furthermore, Boston Digital nor Exergen "paid for the use and modifications of the Dugan Photographs[.]" *See id*. at ¶ 34.  As of February 4, 2025, the date the original Complaint was filed, modified versions of "two of the Dugan Photographs were posted and visible on Exergen's website" without permission or authorization from Plaintiff.  *See id*. at ¶¶ 35-44.

## IV.   **Analysis**

Boston Digital asserts that it doesn't have sufficient minimum contacts with the state of Oklahoma in order for the Court to exercise jurisdiction over it.  Alternatively,

Boston Digital asserts that the exercise of personal jurisdiction over does not comport with traditional notions of fair play and substantial justice.

**1.      Minimum Contacts**

Specific jurisdiction requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *E.g.*, *Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). In evaluating purposeful direction, the Court looks to "both the quantity and quality of a defendant's contracts with the forum." *XMission, L.C. v. PureHealth Research*, 105 F.4th 1300, 1308 (10th Cir. 2024) (citations omitted). "It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Far West,* 46 F.3d at 1077. Here, Plaintiff assets that Boston Digital solicited Plaintiff for her photography services, and thus purposely directed its activities towards Oklahoma. *See* Resp. [Doc. No. 32] at 8-10. However, the Court finds that Boston Digital did not independently seek the services of Plaintiff and solicit her services. Rich Blumenthal of Exergen was the initial individual who proposed that Boston Digital employees should speak with Plaintiff. *See* Murphy Declaration [Doc. No. 30] at ¶ 5; June 11, 2024 Email Thread [Doc. No. 30-1] at 3. Exergen employees proposed that Boston Digital could get the photos of the Exergen products at Plaintiff's photoshoot that had already been scheduled at a pediatric clinic in Edmond, Oklahoma. *Id*. Plaintiff was then introduced by a business partner of the pediatric clinic to employees of Boston Digital via

email.  *See* First Am. Compl. [Doc. No. 25] at ¶ 8; Dugan Declaration [Doc. No. 33] at ¶ 3; Murphy Declaration [Doc. No. 30] at ¶ 6.  Boston Digital employees then arranged a call with Plaintiff to discuss photos needed for the Exergen website.  *See* First Am. Compl. [Doc. No. 25] at ¶ 10; Dugan Declaration [Doc. No. 33] at ¶¶ 4-5.  Plaintiff alleges she "suggested that she could take the photographs needed by Boston Digital and Exergen" at the previously scheduled photoshoot in Edmond, Oklahoma, to which Boston Digital agreed.  *See* First Am. Compl. [Doc. No. 25] at ¶¶ 10-11.  Boston Digital's use of Plaintiff as a photographer based in Oklahoma appears to be merely incidental to their design of Exergen's website.  As alleged, the use of Plaintiff as the photographer for the website photos was initially suggested by employees of Exergen, not Boston Digital.  Furthermore, the location of the photoshoot in Edmond, Oklahoma was suggested by both Exergen and Plaintiff.  While Boston Digital employees provided Plaintiff with what photos were desired for the Exergen website, the photoshoot's location in Oklahoma was not something independently chosen by Boston Digital.  Purposeful direction is not established where a defendant whose actions towards a state are the result of a third party's choice of location.  *See C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1323-24 (10th Cir. 2019); *Far West*, 46 F.3d at 1075-76.  The fact that the photoshoot took place in Oklahoma was mere happenstance to Boston Digital's procurement of photos needed for the website. Even if the Court were to assume that Boston Digital solicited Plaintiff for her photography services, solicitation alone is not sufficient to establish purposeful direction.  *See Far West*, 46 F.3d at 1076; *Silver Lining Enterprises, LLC v. Worldwise Fashion Consulting*, No. CIV-21-00112-JD, 2023 WL 8719624 at *4 (W.D. Okla. Dec. 18, 2023) (citing *Far West*).

The Court also finds that Boston Digital did not "create continuing relationships and obligations with" Plaintiff sufficient to establish purposeful direction. *Burger King*, 471 U.S. at 473 (citations omitted). While Boston Digital was the party who described to Plaintiff what photographs were needed for the Exergen website, Exergen was ultimately the party who would have provided payment to Plaintiff. Exergen employees originally facilitated the introduction of Boston Digital and Plaintiff. *See* Murphy Declaration [Doc. No. 30] at ¶ 5; June 11, 2024 Email Thread [Doc. No. 30-1] at 3. The Parties understood that the photos Plaintiff took were planned to be used for Exergen's website. *See* First Am. Compl. [Doc. No. 25] at ¶ 10; Dugan Declaration [Doc. No. 33] at ¶ 5. Boston Digital employees requested the use of the Dugan Photographs in July of 2024 for an internal presentation relating to the Exergen website project. *See* First Am. Compl. [Doc. No. 25] at ¶ 19. In August and September of 2024, Exergen employees and Plaintiff discussed the pricing and use of the Dugan Photographs. *See generally id*. at ¶¶ 23-29; Dugan Declaration [Doc. No. 33] at ¶¶ 13-14. Boston Digital employees were not involved in these discussions. When Plaintiff and Wilson spoke in October 2024, Wilson indicated that he would talk with Exergen and that "Exergen was planning on using the photographs on Exergen's website." First Am. Compl. [Doc. No. 25] at ¶ 31. There are no facts indicating that a contract existed between Boston Digital and Plaintiff as Boston Digital did not have any independent use for the photographs outside of the Exergen website project. There is also no indication that Boston Digital intended to use Plaintiff for any other projects outside of the photos needed for the Exergen website project. Boston Digital's contacts with Oklahoma are too attenuated to find purposeful direction as Boston Digital employees were

10

merely facilitating the creation of photographs for Exergen's website. *See Dental Dynamics*, 946 F.3d 1223 (finding no purposeful direction where party only "serve[d] as a broker in transactions").

Plaintiff also notes the strong connections she and the photoshoot had to Oklahoma, including: (1) Plaintiff was located in Oklahoma during all communications with Boston Digital; (2) the photoshoot occurred in Oklahoma; (3) the subjects of the photos were Oklahoma-based residents. *See, e.g.,* Resp. [Doc. No. 32] at 8. However, the fact Plaintiff has strong connections to Oklahoma does not demonstrate how Boston Digital purposefully directed *its* activities toward Oklahoma. *See Rockwood Select Asset Fund CI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014). Because Boston Digital did not purposefully direct its activities towards the state of Oklahoma, the Court does not address the causation prong of the minimum contacts analysis.

Accordingly, the Court finds that Plaintiff has failed to demonstrate that Boston Digital has minimum contacts with the state of Oklahoma sufficient for this Court to exercise personal jurisdiction.

**2.     Fair Play and Substantial Justice**

Even if the Court were to find that Plaintiff alleged barely sufficient minimum contacts between Boston Digital and Oklahoma, the Court finds that the exercise of "personal jurisdiction would offend 'traditional notions of fair play and substantial justice.'" *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1061 (10th Cir. 2008) (citing *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S.

102, 113 (1987)).    "The analyses of minimum contacts and reasonableness are complementary, such that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction."  *Id*. at 1061 (cleaned up and citations omitted).  The Court looks to five factors in its analysis:

(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Id*. (quoting *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1279-80 (10th Cir. 2005)).

The first factor weighs in favor of Boston Digital. Notably, "[t]his factor is of special significance, because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous."  *OMI Holdings*, 149 F.3d at 1096 (citations omitted).  None of Boston Digital's employees "ha[ve] ever travelled to Oklahoma for Boston Digital-related business" nor has Boston Digital "done work for any client based in Oklahoma."  Murphy Declaration [Doc. No. 30] at ¶¶ 16-17.  Even if the Court were to consider the communications between Boston Digital employees and Plaintiff, such communications were isolated and initiated by Exergen.   "Defending an action in Oklahoma despite having no business dealings, property, or offices there is burdensome." *Dental Dynamics*, 946 F.3d at 1232.

As to the second factor, "Oklahoma undoubtedly has an interest in providing residents with a convenient forum for redressing grievances." *Id*. However, while this factor may weigh slightly in favor of Plaintiff, the State's interest is mitigated as seven of Plaintiff's ten causes of action arise under federal copyright law, rather than Oklahoma law. It is also unclear from the First Amended Complaint what state's laws would govern Plaintiff's remaining claims.

The third factor, Plaintiff's interest in obtaining relief, is neutral. Plaintiff states that litigating in Massachusetts "would increase her burden and expense" without any additional explanation. *See* Resp. [Doc. No. 32] at 14. Plaintiff has not presented any "evidence indicating that litigating this action in a separate forum, such as [Massachusetts], would *practically foreclose* pursuit of the lawsuit." *Id*. at 1233 (citing *OMI Holdings*, 149 F.3d at 1097)) (emphasis added).

For the fourth factor, judicial efficiency, courts look to the "location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *AST Sports Science*, 514 F.3d at 1062. Key evidence, such as the photographs, email communications, and business records, would be available electronically and have no effect on this analysis. Plaintiff is located in Oklahoma, but employees of Boston Digital and Exergen who could testify would presumably be located in Massachusetts. Regarding governing law, as addressed above, seven of Plaintiff's ten claims relate to federal copyright law and it is unclear at this time what state's laws govern Plaintiff's remaining claims. However, the

13

Court does have personal jurisdiction over Exergen, and there is the potential for piecemeal litigation were Plaintiff to pursue an action against Boston Digital in Massachusetts. In sum, the fourth factor weighs slightly in favor of Plaintiff.

Finally, the fifth factor bears little weight. The Parties' briefing on this factor is threadbare. Neither party has adequately set forth a fundamental social policy at play.

Taking all the factors in consideration, as well as Boston Digital's minimal contacts with the state of Oklahoma, the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. There is not is "an especially strong showing of reasonableness" that overcomes Plaintiff's weak showing of minimum contacts. *See AST Sports Science*, 514 F.3d 1054, 1061 (citations omitted). Accordingly, the Court finds that the exercise of personal jurisdiction over Boston Digital is improper.

## V.    CONCLUSION

IT IS THEREFORE ORDERED Defendant Boston Digital Enterprises, LLC's Renewed Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 29] is GRANTED. Plaintiff's claims against Defendant Boston Digital are DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

IT IS SO ORDERED this 26th day of March, 2026.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

14