**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ALEXANDRA DUGAN,<br><br>Plaintiff,<br><br>v.<br><br>EXERGEN CORPORATION, a Massachusetts Corporation,<br><br>Defendant. | ) | Case No. CIV-25-157-SLP |

**<u>DEFENDANT EXERGEN CORPORATION'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND BRIEF IN SUPPORT</u>**

Pursuant to Fed. R. Civ. P. 12(c), Defendant Exergen Corporation ("Exergen")[1] respectfully moves for judgment on the pleadings as to counts or claims 1 through 7 in the First Amended Complaint.[2] As grounds therefor:

- Claim 1: Allegations specific to Exergen do not appear in Claim 1. Vague references to "Defendants" in Claim 1 do not apprise Exergen of allegations directed to Exergen and fail to identify or state a claim against Exergen.
- Claims 2 through 7: A copyright owner may not sue for infringement until "registration . . . has been made." 17 U.S.C. § 411(a). Registration has not

[1] Exergen is the only defendant remaining in this action; the Court dismissed Boston Digital on March 26, 2026, for lack of personal jurisdiction.

[2] By Order dated March 30, 2026, the Court dismissed Count 8 and Count 10 of the First Amended Complaint. Exergen identifies the counts as "Claims," the word used in the First Amended Complaint.

"been made" until the Copyright Office grants registration of the copyright in the work at issue. *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 308-09 (2019). Plaintiff Alexandra Dugan ("Ms. Dugan") did not make registration of copyrights for the disputed works before initiating this lawsuit. As a result, judgment on the pleadings should enter in favor of Exergen on Ms. Dugan's copyright infringement claims, Claims 2 through 7.

## I. FACTUAL BACKGROUND

Exergen of Watertown, Massachusetts, retained Boston Digital Enterprises, LLC ("Boston Digital") of Boston, Massachusetts, to provide design services for Exergen's website.

On February 4, 2025, Ms. Dugan instituted this lawsuit by filing a complaint against Exergen and Boston Digital alleging violations of the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. §§ 1201 *et seq.* According to the complaint, Ms. Dugan filed applications with the U.S. Copyright Office for two photographs: the photograph titled "ADZ-9215" ("9215 Infant Image") and the photograph titled "ADZ-9092" ("Doctor Image") (collectively, "Dugan Photographs") on December 19, 2024. Compl. [Doc. No. 1] at ¶¶ 49, 69, 84. In the complaint, Ms. Dugan stated that she would "seek to amend [the] complaint to add claims for copyright infringement when the U.S. Copyright Office issue[d] certificates of registration for the Dugan Photographs." Compl. [Doc. No. 1] at ¶ 41.

Exergen filed an answer to the Complaint on April 21, 2025, and Ms. Dugan filed an amended complaint on May 12, 2025. Counts 8 and 10 of the amended complaint have been dismissed. *See* Order on Def. Exergen Corp.'s Mot. to Partially Dismiss Pl.'s First Am. Compl. and Br. in Supp. [Doc. No. 47].

In addition to violations of the DMCA (Claim 1), the First Amended Complaint added direct, contributory, and vicarious copyright infringement (Claims 2-7), two

instances of breach of contract (Claims 8-9), and fraud (Claim 9 (second occurrence)). First Am. Compl. [Doc. No. 25] at ¶¶ 52-114. On March 30, 2026, this Court granted Exergen's Motion to Partially Dismiss the First Amended Complaint, in part, dismissing Claim 8 and Claim 9 (second occurrence), referred to in the Order as Count 10. Order on Def. Exergen Corp.'s Mot. to Partially Dismiss Pl.'s First Am. Compl. and Br. in Supp. [Doc. No. 47].

According to allegations in the amended complaint, the U.S. Copyright Office did not issue certificates of registration for photographs identified by Plaintiff as the Dugan Photographs until March 10, 2025, after Ms. Dugan instituted this lawsuit by filing a complaint against Exergen and Boston Digital. First Am. Compl. [Doc. No. 25] at ¶ 49.

## II. LEGAL STANDARD

Exergen seeks judgment on the pleadings as to Claims 1 through 7 of the First Amended Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Tenth Circuit treats a motion for judgment on the pleadings under Rule 12(c) as a motion to dismiss pursuant to Rule 12(b)(6). *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). Thus, "to survive judgment on the pleadings, [plaintiff] must allege 'a claim to relief that is plausible on its face.'" *Sanchez v. U.S. Dep't of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Tenth Circuit has described the plausibility standard as follows: "To determine whether the claim to relief is 'plausible on its face,' we examine the elements of the particular claim and review whether the plaintiff has pleaded 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sanchez*, 870 F.3d at 1189 (quoting *Iqbal*, 556 U.S. at 678).

## III. ARGUMENT

### A. Claim 1 – DMCA

A pleading that states a claim for relief must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Claim 1 of the First Amended Complaint makes undifferentiated allegations as to "Defendants." *See* First Am. Compl. [Doc. No. 25] at ¶¶ 52-67. Allegations specific to Exergen do not appear in Claim 1. Allegations that referenced "Defendants," even when there were two defendants, were vague. Because Boston Digital has been dismissed from this lawsuit, the term "Defendants" is vague and inaccurate.

Allegations as to "Defendants" fail to provide a short and plain statement of the claim showing that Ms. Dugan is entitled to relief as to Exergen. *See* Fed. R. Civ. P. 8(a)(2). Thus, judgment should enter in favor of Exergen on Claim 1.

### B. Claims 2-7 – Copyright Infringement

A copyright owner may not sue for infringement until "registration . . . has been made." 17 U.S.C. § 411(a). Registration has not "been made" until the Copyright Office grants registration of the copyright in the work at issue. *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 308-09 (2019). Even if a copyright claimant submits the application, the deposit copy, and the fee required to register the work at issue, the copyright claimant must wait until the Copyright Office grants registration before commencing an infringement suit. *Fourth Estate*, 586 U.S. at 302. Federal District Courts throughout the country routinely reject the argument that amending the complaint can cure a failure to register a copyright before initiating a copyright infringement lawsuit. *See Fry Design Co., LLC v. Barndo Co. LLC*, 823 F. Supp. 3d 573, 582 (E.D.N.C. 2026); *Evans v. Robertson*, No. 24-cv-13435, 2026 U.S. Dist. LEXIS 91053, at *7 (E.D. Mich. Feb. 9, 2026) (attached hereto as Exhibit A); *M.V. Music v. V.P. Records Retail Outlet, Inc.*, 653 F. Supp. 3d 31, 42 (E.D.N.Y. 2023); *Stringer v. Richard*, No.

4:21-cv-00632, 2022 U.S. Dist. LEXIS 142968, at *2 (N.D. Ohio Aug. 10, 2022) (attached hereto as Exhibit B); *Rawls v. Paradise Artists, Inc*, No. 3:18-0417, 2020 U.S. Dist. LEXIS 53818, at *5-6 (M.D. Tenn. Mar 27, 2020) (attached hereto as Exhibit C).

Here, according to the First Amended Complaint at paragraph 49, the U.S. Copyright Office did not grant registration of the 9215 Infant Image and the Doctor Image until March 10, 2025, after Ms. Dugan sued for infringement. Whether Ms. Dugan later amended the complaint to include such registrations is irrelevant to the determination of whether the registration requirement under 17 U.S.C. § 411(a) was satisfied – it clearly was not. As such, each of Ms. Dugan's copyright infringement claims is not plausible on its face, and Exergen is entitled to judgment as to all copyright infringement claims, which are asserted in Claims 2 through 7 of the First Amended Complaint at paragraphs 68 to 97.

## IV. CONCLUSION

Based on the foregoing, Defendant Exergen Corporation respectfully requests that the Court enter judgment on the pleadings in favor of Exergen as to Claims 1 through 7 of the First Amended Complaint. Exergen further requests that the Court deny Ms. Dugan leave to amend the First Amended Complaint.

Dated: August 21, 2026

Respectfully submitted,

/s/ Susan G. L. Glovsky
David M. Sullivan, OBA #18851
Anthony Hendricks, OBA #31083
CROWE DUNLEVY
A Professional Corporation
Braniff Building
324 N. Robinson Ave. Suite 100
Oklahoma City, OK 73102-8273
(404) 235-7700
(405) 239-6651 (Facsimile)
david.sullivan@crowedunlevy.com
anthony.hendricks@crowedunlevy.com

AND

Susan G. L. Glovsky (BBO# 195880) (admitted *Pro Hac Vice*)
Benjamin H. Silvers (BBO#715739) (admitted *Pro Hac vice*)
Hamilton, Brook, Smith & Reynolds, P.C.
155 Seaport Blvd.
Boston, MA 02210
Telephone: 617-607-5900
Fax: 978-341-0136
susan.glovsky@hbsr.com
benjamin.silvers@hbsr.com

*Attorneys for Defendant Exergen Corporation*

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 21, 2026, the foregoing DEFENDANT EXERGEN CORPORATION'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND BRIEF IN SUPPORT was electronically filed using the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

/s/ Susan G. L. Glovsky
Susan G. L. Glovsky

# EXHIBIT A

*Evans v. Robertson,* No. 24-cv-13435, 2026 U.S. Dist. LEXIS 91053 (E.D. Mich. Feb. 9, 2026)

# Evans v. Robertson

United States District Court for the Eastern District of Michigan, Southern Division

February 9, 2026, Decided; February 9, 2026, Filed

Case No. 24-cv-13435

**Reporter**

2026 U.S. Dist. LEXIS 91053 *; 2026 LX 259408

SYBRENA EVANS, Plaintiff, v. DANIELLE ROBERTSON, et al., Defendants.

**Prior History:** Evans v. Robertson, 2025 U.S. Dist. LEXIS 42517, 2025 WL 748143 (Feb. 13, 2025)

**Counsel:** [*1] Sybrena Evans, ENJOINED from Pro Se Portal, Plaintiff, Pro se, Northville, MI.

Danielle Robertson, ENJOINED from Pro Se Portal, also known as, Dani Robertson, also known as, Dani Montana, also known as, Turth Teller Dani, also known as, Lori Davis, also known as, Danielle Robertson, LLC, also known as, Truth Teller Dani, also known as, Unhinged with Bundy, also known as, WhewChile the Ghetto, also known as, Dani Monroe, Defendant, Pro se, Sheridan, WY.

**Judges:** ELIZABETH A. STAFFORD, United States Magistrate Judge. Honorable Judith E. Levy.

**Opinion by:** ELIZABETH A. STAFFORD

## Opinion

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTIONS TO DISMISS**

**(ECF NOS. 77, 127)**

### I. Introduction

Plaintiff Sybrena Evans, proceeding pro se, sues Defendant Danielle Robertson[1] and Jane Does 1-10 for copyright infringement, defamation, fraud, and harassment. ECF No. 1. The Honorable Judith E. Levy referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1). ECF No. 7. Robertson moves to dismiss the action for lack of subject-matter jurisdiction and failure to state a claim. ECF No. 77. She also moves to dismiss for failure to join necessary parties. ECF No. 127. The Court **RECOMMENDS** that Robertson's motion to dismiss

---

[1] Robertson made a special appearance as a Jane Doe stating that "Danielle Robertson" is not her legal name. ECF No. 28, PageID.183. For the sake of clarity, the Court will nevertheless refer to this individual as Robertson.

for lack of jurisdiction [*2] and failure to state a claim be **GRANTED IN PART AND DENIED IN PART** and that her motion to dismiss for failure to join parties be **DENIED**.

## II. Background

Evans, a Michigan resident, alleges that Robertson engaged in a pervasive campaign of harassment and cyberbullying on her social media platforms and websites from 2022 to 2024. ECF No. 1, PageID.7-9. The specifics of those allegations are discussed in the Court's September 2025 report and recommendation (R&R). ECF No. 75. Evans sued for copyright infringement, defamation, false reports and fraudulent claims, cyberbullying and harassment, impersonation, and conspiracy. ECF No. 1.

Adopting the R&R, Judge Levy dismissed several of Evans's claims for lack of personal jurisdiction, leaving the remaining claims: (1) copyright infringement stemming from the use of Evans's likeness captured during a personal protective order (PPO) hearing held via Zoom; (2) defamation stemming from Robertson's alleged posts about Evans's professional misconduct and posts about wellness checks on Evans prompted by Robertson's allegedly false reports to police; and (3) cyberbullying and harassment stemming from Robertson's posts about Evans's divorce. ECF No. 75, [*3] PageID.825; ECF No. 112, PageID.2326.

## III. Analysis

### A.

Robertson moves for dismissal for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). ECF No. 77, PageID.981. A plaintiff must show that the court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," or that jurisdiction is proper because of the diversity of citizenship of the parties. 28 U.S.C. §§ 1331, 1332. "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). Robertson makes a facial attack here, challenging whether Evans has adequately pleaded a plausible federal claim or that diversity jurisdiction exists. Thus, the Court takes the allegations of the complaint as true. *Id.* Evans bears the burden of establishing that subject-matter jurisdiction exists. *Id.*

To invoke subject-matter jurisdiction under § 1331, Evans would need to plead "a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006). "[F]ederal courts lack subject-matter jurisdiction when an asserted federal claim is so insubstantial, implausible, foreclosed by prior decisions [*4] of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629, 129 S. Ct. 1896, 173 L. Ed. 2d 832 (2009) (cleaned up). Although courts give a more liberal reading to pleadings filed by pro se litigants than to those drafted by lawyers, a pro se complaint still must plead facts showing

that the Court has jurisdiction. *Christenberry v. White*, No. 3:20-CV-176-TAV-DCP, 2020 U.S. Dist. LEXIS 201260, 2020 WL 6371174, at *3 (E.D. Tenn. Oct. 29, 2020).

Robertson contends that Evans's sole federal claim must be dismissed under Rule 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

In deciding whether a plaintiff has set forth a plausible claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual [*5] allegations. *Iqbal*, 556 U.S. at 678. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*, and the Court has no duty to create a claim not spelled out in the pleadings, *Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 871 n.4 (6th Cir. 2007).

The Court evaluates whether it has federal question or diversity jurisdiction over the action.

**1**.

Evans advances one federal claim: infringement under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* ECF No. 1, PageID.7-8. Copyright protection applies to "original works of authorship," such as literary, music, pictorial, or audiovisual works. 17 U.S.C. § 102(a). "An author gains 'exclusive rights' in her work immediately upon the work's creation, including rights of reproduction, distribution, and display." *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 300-01, 139 S. Ct. 881, 203 L. Ed. 2d 147 (2019) (citing 17 U.S.C. § 106). And a copyright owner may bring a lawsuit for alleged infringement of the copyright, "subject to the requirements of section 411." 17 U.S.C. § 501(b).

Section 411 requires copyright owners to register their copyright before initiating an infringement action:

> No civil action for infringement of the copyright...shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. ... [W]here the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper [*6] form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

17 U.S.C. § 411(a). The registration requirement "is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Fourth Est.*, 586 U.S. at 301. Registration is made "only when the Copyright Office grants registration," and not when the application is submitted. *Id.* at 302. Thus, only after the Copyright Office grants or refuses registration may the copyright owner bring an infringement lawsuit. *Id.* at 308.

Three days before filing this action in December 2024, Evans submitted a copyright application for a still image of her likeness captured during a PPO hearing held via Zoom in Wayne County Circuit Court (WCCC). ECF No. 104, PageID.1974; ECF No. 129, PageID.2813; ECF No. 131, PageID.2987, 2991-2992. On December 1, 2025, the Copyright Office refused registration. ECF No. 129-1, PageID.2953; ECF No. 131, PageID.2987. Evans recognizes that she did not exhaust her copyright infringement claim when she filed this action but moves for leave to supplement her complaint to add allegations curing that [*7]  deficiency now that her application has been refused. ECF No. 129, PageID.2813.

A plaintiff cannot cure a failure to exhaust after the fact by amending the complaint once copyright registration or refusal is obtained. *Stringer v. Richard*, No. 4:21-cv-00632, 2022 U.S. Dist. LEXIS 142968, 2022 WL 3223800, at *2 (N.D. Ohio Aug. 10, 2022) (collecting cases); *Rawls v. Paradise Artists, Inc*, No. 3:18-0417, 2020 U.S. Dist. LEXIS 53818, 2020 WL 1493610, at *5-6 (M.D. Tenn. Mar. 27, 2020) (same). Holding otherwise would render the registration requirement a "meaningless formality," as "a plaintiff could file suit at any time, notwithstanding Section 411(a)'s precondition, and simply update the complaint when registration finally occurred." *Rawls*, 2020 U.S. Dist. LEXIS 53818, 2020 WL 1493610, at *5 (quoting *Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 U.S. Dist. LEXIS 56578, 2019 WL 1454317, at *2 (S.D.N.Y. Apr. 2, 2019)). Dismissal without prejudice is thus warranted.[2] *Id.*, at *6.

Dismissal with prejudice is also warranted on the merits of Evans's copyright claim. "A plaintiff alleging direct copyright infringement must show (1) a valid copyright in the at-issue work; and (2) the defendant copied protected elements of that work." *Tomelleri v. SunFrog, LLC*, 721 F. Supp. 3d 566, 572 (E.D. Mich. 2024). Evans claims that she owns a copyright "to her personal image, likeness, and video testimony" recorded during the PPO hearing, on which Robertson allegedly infringed. ECF No. 1, PageID.7. Evans concedes that "[t]he image at issue originates from a private Michigan PPO hearing video lawfully *recorded by the court* and depicting Plaintiff's live appearance." ECF No. 104, PageID.1974. These allegations [*8]  do not show that Evans has a valid copyright.

As stated above, copyright protection applies to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). "Fixing" a work in a stable or permanent form must be achieved "under the authority of the author." *Id.* § 101. An author "is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S.

---

[2] Evans correctly argues that the registration requirement under § 411(a) is not jurisdictional. ECF No. 104, PageID.1971-1973; *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010). But she misapprehends Robertson's argument. Because the sole federal claim for copyright infringement should be dismissed, federal question jurisdiction is lacking under 28 U.S.C. § 1331. Thus, the Court evaluates below whether diversity jurisdiction exists under § 1332.

730, 737, 109 S. Ct. 2166, 104 L. Ed. 2d 811 (1989). And "[a]n application for copyright registration may be submitted by any author or other copyright claimant of a work, the owner of any exclusive right in a work, or the duly authorized agent of any such author, other claimant, or owner." 37 C.F.R. § 202.3(c)(1).

Evans has not plausibly alleged that she may register a copyright for the PPO hearing video. She did not author the video recording of the PPO hearing. Rather, the WCCC "fixed" the hearing into a digital recording. Evans contends that she owns a copyright for her likeness captured during the hearing. ECF No. 104, PageID.1974. But a person's name, persona, or likeness is not a "work of authorship" under the Copyright Act and is not entitled to copyright protection. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003-04 (9th Cir. 2001); *Trapp v. Holder*, No. 2:14-CV-12235, 2014 U.S. Dist. LEXIS 83227, 2014 WL 2780079, at *1 (E.D. Mich. June 19, 2014). The authority Evans cites supports this conclusion. *See [*9] Garcia v. Google, Inc.*, 786 F.3d 733, 741-44 (9th Cir. 2015) (holding that an actor's likeness or performance in a film is not independently protectible).

The Copyright Office relied on the same reasons for refusing Evans's application. ECF No. 131, PageID.2987. This opinion is persuasive, given the sound rationale and the Office's expertise in identifying protectable works and applying the Copyright Act. *See Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 480 (6th Cir. 2015) ("How much to defer to the determination to issue a copyright registration depends on the thoroughness evident in the agency's consideration, the validity of its reasoning, ... and all those factors which give it power to persuade, if lacking the power to control." (cleaned up)). Beyond Evans's failure to comply with the registration requirement under § 411(a), she has failed to state a plausible copyright infringement claim.

**2**.

Robertson contends that Evans has not adequately pleaded facts supporting diversity jurisdiction. ECF No. 77, PageID.982-983. To show diversity under § 1332, a plaintiff must allege "complete diversity of the parties and an amount in controversy exceeding $75,000." *Naji v. Lincoln*, 665 F. App'x 397, 400 (6th Cir. 2016). Complete diversity means that "no plaintiff is a citizen of the same state as any defendant." *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010). The citizenship of an individual is his or her state of domicile. *Napletana v. Hillsdale College*, 385 F.2d 871, 872 (6th Cir. 1967).

Evans alleges [*10] that she is a Michigan citizen. ECF No. 1, PageID.5. Although the complaint alleges that Robertson is a Delaware citizen, the parties' filings have since revealed that she is an anonymous internet user who employs a series of fictitious names. ECF No. 75, PageID.787, 817 (discussing Robertson's aliases). That is, Robertson's identity and citizenship are unknown.

Robertson strenuously opposes revealing her identity and has defied Judge Levy's orders to disclose her legal name and postal address, arguing that the First Amendment protects anonymous online critics from being "unmasked." *See* ECF No. 77, PageID.994; ECF No. 118, PageID.2393; ECF No. 124, PageID.2636. "An author's decision to remain anonymous is an

aspect of the freedom of speech protected by the First Amendment." *Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831, 835 (6th Cir. 2017) (cleaned up). In litigation involving anonymous internet users, courts have weighed the validity of the claims and the plaintiff's need to uncover the users' identities against the First Amendment's protection of anonymous speech. *See, e.g., id.* at 834; *Sony Music Ent. Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004); *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578-79 (N.D. Cal. 1999).

Some courts have declined to dismiss such actions on jurisdictional grounds when the internet users wish to remain anonymous, noting that jurisdictional discovery may be ordered if necessary. *See Sony Music*, 326 F. Supp. 2d at 567 ("[T]his Court has [*11] the discretion to allow discovery to determine the basis for personal jurisdiction."); *Columbia Ins.*, 185 F.R.D. at 578 ("[A] district court does have jurisdiction to determine the facts relevant to whether or not it has in personam jurisdiction in a given case."); *see also C.H. ex rel. Shields v. United States*, 818 F. App'x 481, 484 (6th Cir. 2020) (when defendants challenge subject-matter jurisdiction, plaintiffs should be permitted to conduct jurisdictional discovery if they explain what relevant evidence they seek); *but see Sandoval v. Doe. No. 1*, 591 F. Supp. 3d 7, 10-11 (E.D.N.C. 2022) (dismissing case for lack of subject-matter jurisdiction when no federal claims were at issue and the citizenships of anonymous defendants were unknown); *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 132-33 (D.D.C. 2009) (same). Courts also acknowledge that "traditional reluctance for permitting filings against John Doe defendants" and strict compliance with service requirements and other rules "should be tempered by the need to provide injured parties with an [sic] forum in which they may seek redress for grievances." *Columbia Ins.*, 185 F.R.D. at 578.

Robertson has repeatedly stated that she is not domiciled in Michigan and maintains no other ties to the state. ECF No. 28, PageID.182, 195; ECF No. 39, PageID.351-352; ECF No. 77, PageID.991-992. Some courts have held that "rather than affirmatively alleging the citizenship of a defendant, a plaintiff may allege [*12] that the defendant is *not* a citizen of the plaintiff's state of citizenship." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 (3d Cir. 2015). The Court is satisfied, at this stage, that Robertson is not a Michigan citizen and that complete diversity exists. Discovery into Robertson's identity may become necessary at some stage of the litigation. *See Signature Mgmt. Team, LLC v. Doe*, No. 13-cv-14005, 2015 WL 13036681, at *8-9 (E.D. Mich. Nov. 4, 2015). If discovery reveals that she is nondiverse, the Court will recommend dismissing the action for lack of subject-matter jurisdiction. *See Taylor v. Doe*, No. 1:20-cv-03398, 2021 U.S. Dist. LEXIS 129358, 2021 WL 2940919, at *1 n.1 (S.D.N.Y. July 12, 2021) (adopting a "wait and see" approach when evaluating diversity jurisdiction in a case against an anonymous defendant).

**B**.

Robertson next contends that Evans's remaining claims are barred under the statute of limitations. ECF No. 77, PageID.986. State-law defamation claims are governed by a one-year statute of limitations. Mich. Comp. Laws § 600.5805(11); *see also Redmond v. Heller*, 332 Mich. App. 415, 957 N.W.2d 357, 368 (Mich. Ct. App. 2020). A defamation claim accrues "'at the time the wrong upon which the claim is based was done regardless of the time when damage results.'" *Redmond*, 957 N.W. 2d at 368 (quoting Mich. Comp. Laws § 600.5827). Each

publication of a defamatory statement is independently actionable, and each statement is subject to a separate period of limitations. *Id.* So "a plaintiff's proofs and recovery would be limited to those libels or slanders that occurred within one year of the suit." *Id.*

Evans asserts [*13] a defamation claim against Robertson for allegedly reporting her for professional misconduct to Michigan's Department of Licensing and Regulatory Affairs (LARA) and for posting about the alleged misconduct and LARA investigations on social media. ECF No. 1, PageID.8-11. Evans alleges that Robertson posted in August 2022 that Evans was found guilty of medical malpractice. *Id.*, PageID.9. In September 2023, Robertson allegedly submitted a LARA complaint falsely accusing Evans of misconduct and posted about it in on social media. *Id.*, PageID.10, 55; ECF No. 66, PageID.632-633. In October 2023, Robertson allegedly created a Change.org petition accusing Evans of unethical behavior and encouraged her social media followers to sign it. ECF No. 1, PageID.15, 48; ECF No. 67, PageID.647; ECF No. 68, PageID.674. These actions allegedly took place more than a year before Evans filed her complaint on December 23, 2024. Thus, the statute of limitations precludes Evans from pursuing defamation claims based on these allegations.

But Evans makes other allegations of defamation within the limitations period. In coordination with the PPO petitioner (identified by both parties as Keva Williams),[3] Robertson [*14] allegedly made more LARA complaints in 2024. ECF No. 1, PageID.11, 58-61; ECF No. 66, PageID.637, 639. Robertson later posted about the complaints and published a letter from LARA. ECF No. 1, PageID.11, 61; ECF No. 66, PageID.640. Because these activities allegedly took place less than a year before Evans filed the complaint, she may proceed with her defamation claims on these grounds.

It is unclear when Robertson allegedly made social media posts urging her followers to submit LARA complaints against Evans. *See* ECF No. 1, PageID.9-10, 49, 51, 56; ECF No. 68, PageID.670. The Court cannot determine whether the defamation claims premised on these statements were made within the limitations period and thus declines to dismiss them as untimely.

Evans also alleges that Robertson made fraudulent calls to local police posing as Evans's family member and neighbor. ECF No. 1, PageID.10. Officers performed wellness checks on Evans and recorded her on bodycam. *Id.*, PageID.10, 52. Robertson allegedly obtained the bodycam footage through a FOIA request and published content from it to social media. *Id.*, PageID.10, 54; ECF No. 65, PageID.606; ECF No. 67, PageID.658.

As explained in the September [*15] 2025 R&R, the Court construes Evans's claim, titled "false reports and fraudulent claims," as a defamation claim. ECF No. 75, PageID.802. "When determining the applicable period of limitation for a claim, the court must ascertain the true nature of the claim." *Ledezma v. McLaren Bay Region*, No. 374495, 2025 Mich. App. LEXIS 10145, 2025 WL 3673682, at *3 (Mich. Ct. App. Dec. 17, 2025). A valid claim of fraud would require Evans to allege that she detrimentally relied on a misrepresentation by Robertson. *See Hord v. Envt'l Rsch. Inst. of Mich.*, 579 N.W.2d 133, 135 (Mich. Ct. App. 1998). That is not the

---

[3] *See, e.g.*, ECF No. 129, PageID.2816-2817, 2859; ECF No. 127, PageID.2648.

nature of Evans's claim. Instead, the alleged harm includes harassment and reputation harm, so the Court construes the claim as one for defamation. *See* ECF No. 1, PageID.10-11.

The alleged wellness checks and social media posts occurred in October 2022 and June 2023, more than a year before Evans filed the claims. *Id.*, PageID.10, 52-54; ECF No. 65, PageID.605-606; ECF No. 67, PageID.658. These claims are thus barred under the statute of limitations.

Last, Evans advances a claim of "cyberbullying and harassment" stemming from Robertson's posts about Evans's divorce. ECF No. 1, PageID.12. Because Michigan does not recognize a civil cause of action for cyberbullying or online harassment, Evans's claim is again properly construed as one for defamation. Robertson's alleged posts about Evans's [*16] divorce were dated February 2023. *Id.*, PageID.12, 74-75; ECF No. 67, PageID.667. These posts were made more than a year before Evans filed suit, so the defamation claim stemming from these allegations is barred under the statute of limitations.

Evans argues that the statute of limitations does not foreclose her defamation claims because Robertson engaged in continuing defamation. ECF No. 104, PageID.1986. But Evans cites caselaw evaluating how the statute of limitations applies to defamation claims under *Tennessee* law. *Id.* (citing *Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 500-01 (6th Cir. 2015). The Court addressed above how Michigan courts apply the statute of limitations to multiple defamatory statements. Evans also argues the timeliness of her copyright infringement claim, which the Court has determined should be dismissed on other grounds. ECF No. 104, PageID.1975.

**C**.

Robertson next argues that Evans fails to state a plausible claim. ECF No. 77, PageID.983-985, 987-990. To state a defamation claim, a plaintiff must allege four elements:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability [*17] of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.

*Ghanam v. Does*, 303 Mich. App. 522, 845 N.W.2d 128, 142 (Mich. Ct. App. 2014) (cleaned up). And "a plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory." *Id.* (cleaned up).

Robertson first argues that Evans has identified no statements that are false and instead challenges statements couched as allegations, opinion, or hyperbole. ECF No. 77, PageID.985, 987-988. "[N]ot all defamatory statements are actionable," and a statement is protected by the First Amendment if it "cannot be reasonably interpreted as stating actual facts about the plaintiff." *Ireland v. Edwards*, 230 Mich. App. 607, 584 N.W.2d 632, 636 (Mich. Ct. App. 1998) (citing *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990)). A statement of opinion is actionable if it is "provable as false," meaning an "objectively verifiable event" is actionable while "a subjective assertion" is not. *Id.* at 637. For example, the statement,

"In my opinion Mayor Jones is a liar," is actionable, while the statement, "In my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin," is not. *Id.*

And "certain statements, although factual on their face, and provable as false, could not be interpreted by a reasonable listener [*18] or reader as stating actual facts about the plaintiff." *Id.* at 638. Thus, parodies, political cartoons, and satires are not actionable. Nor are statements involving "rhetorical hyperbole" or "vigorous epithet," such as exaggerations labelling someone a "blackmailer," "traitor," or "crook." *Kevorkian v. Am. Med. Ass'n*, 237 Mich. App. 1, 602 N.W.2d 233, 237 (Mich. Ct. App. 1999) Rather, "statements must be viewed in context to determine whether they can reasonably be understood as stating actual facts about the plaintiff." *Ireland*, 584 N.W.2d at 638. A court may decide as a matter of law whether an alleged statement is capable of a defamatory meaning. *Id.*

The Court evaluates Robertson's alleged statements that were timely under the statute of limitations. As described above, Robertson made posts in 2024 about the LARA investigations. Robertson posted a copy of a letter from LARA to her YouTube channel with the caption:

> This was sent to me. So, I'm sharing it. Again, I didn't file this, someone else did. However, I will say that Sybrena is a narcissist who likes to gaslight and hide her hand. She also likes to twist things into something that it isn't, which makes her a liar. But ultimately the Judge saw right through her narc games, which is why he said it was mutual contact between her and the other party....Her [*19] unhealthy obsession with others along with her inability to get views without clout chasing causes her to act unhinged. As a reminder, don't believe a word she says, all receipts will be posted...for you to review yourself. That way, you'll see with your own eyes what has been submitted or not submitted regarding her.

ECF No. 1, PageID.59; ECF No. 66, PageID.637. She again posted a copy of a June 2024 LARA letter on her website with the title, "Medical Board Investigation! Submitted to Michigan Courts as well." ECF No. 1, PageID.60. Robertson also posted a copy of a September 2024 LARA letter to another YouTube channel, with the caption:

> Money grabbing clout chasers continue to get drunk and make "fake" countdowns, not knowing what things mean or how to comprehend documents. Meanwhile, they're under investigation again by the Michigan Medical board. I'm sure their internal files are loaded with complaints because of their unethical conduct. Similar to bad cops who have a ton of internal complaints filed against them. A pattern of behavior has been established. IMO, alcoholism is a contributing factor in her behavior.

*Id.*, PageID.61; ECF No. 66, PageID.640.

Robertson allegedly made social [*20] media posts urging her followers to submit LARA complaints against Evans, although it is unclear when Robertson made those alleged posts. One alleged post supplies Evans's license number and a link to LARA's website, with a directive to "[f]ile a medical complaint against the license for doxing and possible access to confidential records as a Physician Assistant." ECF No. 1, PagelD.49. Another alleged post states:

> Michigan complaint form: You can file anon. There's an option to report possible drug/substance abuse, such as her alleged but apparent alcohol consumption, and a box to

> fill in complaints such as mental illness, etc. [Link to LARA website]. Here's the information needed to complete the complaint: [two more links].

*Id.*, PageID.51; ECF No. 68, PageID.670.

Michigan courts have cautioned that whether a statement could reasonably be interpreted as fact or subjective opinion depends on the forum where it is published.

> The context and forum in which statements appear also affect whether a reasonable reader would interpret the statements as asserting provable facts. Courts that have considered the matter have concluded that Internet message boards and similar communication platforms [*21] are generally regarded as containing statements of pure opinion rather than statements or implications of actual, provable fact. "[A]ny reader familiar with the culture of...most electronic bulletin boards...would know that board culture encourages discussion participants to play fast and loose with facts.... Indeed, the very fact that most of the posters remain anonymous, or pseudonymous, is a cue to discount their statements accordingly."

*Ghanam*, 845 N.W.2d at 144 (cleaned up). Thus, "'[b]logs and chat rooms tend to be vehicles for the expression of opinions; by their very nature, *they are not a source of facts or data upon which a reasonable person would rely*.'" *Id.* (quoting *Doe v. Cahill*, 884 A.2d 451, 465 (Del. 2005)) (emphasis added in *Ghanam*).

Robertson is not a journalist or recognizable media personality who might be afforded some credibility. Her alleged posts, which were made anonymously via various usernames on YouTube, her personal website, and social media, cannot reasonably be interpreted as factual. Robertson's descriptions of Evans as a "narcissist who likes to gaslight," a "liar," someone who "acts unhinged," a "clout chaser," and "unethical," are statements of opinion. Robertson's claim that she was sure that LARA's internal files are "loaded" [*22] with complaints was obvious speculation. The same is true of her claims that Evans suffers from substance abuse and mental illness, as she prefaces those allegations with "apparent," "alleged," and "IMO," an acronym for "in my opinion." And given the longstanding, bitter feud between the parties, no reasonable person would rely on Robertson's statements about Evans as factual. Thus, Evans's defamation claims based on these posts should be dismissed.

Robertson and Williams also allegedly filed LARA complaints against Evans to get her physician assistant license revoked.[4] ECF No. 1, PageID.11. The exact substance of the LARA complaints is unknown, as Evans lacks access to the communications. But Evans alleges that Robertson made an earlier LARA complaint alleging malpractice and that the later complaints were part of the same "campaign" of making "baseless" accusations "aimed at revoking [her] medical license." *Id.*, PageID.9-11. And LARA's response letter stated that the department would investigate whether Evans violated the Public Health Code. *Id.*, PageID.58. Thus, the allegations support an inference that Robertson and Williams accused Evans of malpractice. "[D]efamation

---

[4] Robertson may be liable for Williams's statements if the two conspired to defame Evans, as alleged. "All persons who cause or participate in the publication of a libelous or slanderous matter are responsible for such publication." *Stanton v. Anchor Bay Sch. Dist.*, No. 358408, 2023 Mich. App. LEXIS 1208, 2023 WL 2144544, at *6 (Mich. Ct. App. Feb. 21, 2023) (quoting *Bowerman v Detroit Free Press*, 287 Mich. 443, 283 N.W. 642 (Mich. 1939)) (cleaned up).

claims may [*23] be premised on false accusations of medical malpractice." *LL NJ, Inc. v. NBC-Subsidiary (WCAU-TV), L.P.*, No. 06-14312, 2008 WL 1923261, at *24 (E.D. Mich. Apr. 28, 2008); *see also Swenson-Davis v. Martel*, 135 Mich. App. 632, 354 N.W.2d 288, 290 (Mich. Ct. App. 1984) (defamation per se exists when the statements "are false and malicious and are injurious to a person in his or her profession or employment").

Robertson contends that the LARA complaints cannot sustain a defamation claim because they are privileged. ECF No. 77, PageID.985. "Michigan law recognizes a qualified privilege as applying to communications on matters of 'shared interest' between parties." *Rosenboom v. Vanek*, 182 Mich. App. 113, 451 N.W.2d 520, 522 (Mich. Ct. App. 1989). The privilege "extends to all bona fide communications concerning any subject matter in which a party has an interest or a duty owed to a person sharing a corresponding interest or duty," including moral and social obligations. *Id.* The privilege applies to a report of medical malpractice to a state regulatory agency. *Nuyen v. Slater*, 372 Mich. 654, 127 N.W.2d 369, 373 (Mich. 1964) (involving a nurse's claim that she was defamed in a letter accusing her of misconduct sent to the state health department).

"A party claiming defamation 'may overcome a qualified privilege only by showing that the statement was made with actual malice.'" *Knutson v. Gassert*, No. 361675, 2023 Mich. App. LEXIS 6620, 2023 WL 5988457, at *4 (Mich. Ct. App. Sept. 14, 2023) (quoting *Prysak v. RL Polk Co.*, 193 Mich. App. 1, 483 N.W.2d 629 (Mich. Ct. App. 1992)). "Actual malice" means "knowledge that the published statement was false or as reckless disregard as to whether the statement was false or not." [*24] *Id.* Evans alleges that Robertson submitted baseless LARA complaints in a malicious attempt to get Evans's professional license revoked. ECF No. 1, PageID.11. Taking this allegation as true, as the Court must under Rule 12(b)(6), Evans has plausibly alleged facts showing that the privilege does not apply.

Robertson also argues that Evans is a limited-purpose public figure and so must plausibly allege that the defamatory statements were made with actual malice. ECF No. 77, PageID.989. Statements about public figures are entitled to "qualified immunity that can be overcome only by a showing of actual malice." *New Franklin Enters. v. Sabo*, 192 Mich. App. 219, 480 N.W.2d 326, 328 (Mich. Ct. App. 1991). "A private person can become a limitedpurpose public figure when he voluntarily injects himself or is drawn into a particular controversy and assumes a special prominence in the resolution of that public controversy." *Id.* The pleadings do not show that the LARA complaints became a matter of public controversy; there is no sign that the complaints garnered public interest or press coverage. *See id.* Besides, Evans has sufficiently alleged facts supporting actual malice as discussed above.[5]

---

[5] Robertson asserts two other cursory arguments that the Court declines to address. First, she argues that the defamation claims must be dismissed because Evans self-published certain statements. ECF No. 77, PageID.990. But she does not identify the statements or connect them to the allegations in the complaint. Second, she argues that the Strategic Lawsuit Against Public Participation statute, commonly known as the anti-SLAPP Act, shields her from suit. *Id.*, PageID.990-991. But she cites no state's anti-SLAPP statute and offers no analysis about the application of the statute in federal court. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Thus, Evans has stated a plausible defamation claim based on Robertson's and Williams's 2024 LARA complaints. [*25]

**D**.

Robertson challenges personal jurisdiction, raising the same arguments previously addressed. ECF No. 77, PageID.991-994. The Court evaluated all claims and recommended dismissing some for lack of personal jurisdiction. ECF No. 75, PageID.794-812. Judge Levy adopted that R&R. ECF No. 112. The determination that the Court has personal jurisdiction over other claims is the law of the case and should not be revisited, as Robertson offers no extraordinary circumstances for doing so. *Hayden v. Rhode Island*, 13 F. App'x 301, 302 (6th Cir. 2001) ("Under the law of the case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation.").

And Robertson again challenges venue, making the same cursory arguments already considered: that she does not reside in, have substantial ties to, or conduct business in Michigan. ECF No. 77, PageID.995. Venue for a civil action is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). As concluded in the September 2025 R&R, the claims over which the Court has personal jurisdiction are tied to Robertson's alleged acts targeting Michigan. And because Robertson does not offer substantive [*26] analysis showing that venue is improper, she has waived this issue. *See McPherson*, 125 F.3d at 995-96.

**E**.

Last, the Court addresses Robertson's motion to dismiss for failure to join a necessary party under Rule 19. ECF No. 127. Robertson maintains that Williams and the WCCC are necessary parties. *Id.*, PageID.2646, 2648. And because Williams would be a nondiverse defendant and the WCCC is entitled to absolute immunity, Robertson argues that dismissal is warranted under Rule 19. *Id.*, PageID.2649.

Rule 19 governs the required joinder of parties and "compel[s] plaintiffs to sue all persons who are necessary and indispensable to the adjudication of the case." *Alter Domus, LLC v. Winget*, No. 23-10458, 2023 U.S. Dist. LEXIS 104297, 2023 WL 4030025, at *3 (E.D. Mich. June 15, 2023). "Assessing whether joinder is proper under Rule 19 is a three-step process." *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004). Courts must consider: (1) whether the person or entity is a necessary party under Rule 19(a); (2) if so, whether joinder of that person or entity will deprive the court of subject matter jurisdiction; and (3) if joinder is not feasible, whether the factors outlined in Rule 19(b) show that the court should dismiss the case "in equity and good conscience" because the absentee is indispensable. *Id.* (cleaned up). "If the threshold requirements of Rule 19(a) are not satisfied, the Court need not engage in the Rule 19(b) inquiry." *State Farm Mut. Ins. Co. v. Elite Health Ctrs., Inc.*, No. 16-13040, 2017 U.S. Dist. LEXIS 82736, 2017 WL 2351744, at *6 (E.D. Mich. May 31, 2017).

Robertson falters at the [*27] first step of this analysis, as Williams and the WCCC are not necessary under Rule 19(a). Rule 19(a)(1) states that a person must be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

"No precise formula" dictates whether a party is necessary under Rule 19(a), as those determinations "are heavily influenced by the facts and circumstances of individual cases." 7 Wright & Miller's Federal Practice and Procedure § 1604 (3d ed.).

Robertson contends that Williams is central to many of Evans's claims as the alleged coconspirator, PPO petitioner, source of the PPO hearing image, and filer of some LARA complaints. ECF No. 127, PageID.2649-2658. The Court recommends dismissal of all claims except for Evans's defamation claim stemming from Robertson's and Williams's 2024 LARA [*28] complaints. The Court thus evaluates only whether Williams is a necessary party to that claim. She is not.

The Sixth Circuit has held that "a person's status as a joint tortfeasor does not make that person a necessary party, much less an indispensable party." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 204 (6th Cir. 2001) (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7-8, 111 S. Ct. 315, 112 L. Ed. 2d 263 (1990)); *see also Wilson v. Gordon*, 822 F.3d 934, 957 (6th Cir. 2016); Fed. R. Civ. P. 19(a) Advisory Committee's Note to 1966 Amendment ("[A] tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability."). The same principle applies to alleged co-conspirators. *PaineWebber*, 276 F.3d at 204 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 946 (11th Cir. 1999)) ("[A] state court complaint identifying the defendants as joint tortfeasors and coconspirators does not make the absent party indispensable."); *Harshaw v. Bethany Christian Servs.*, No. 1:08-cv-104, 2009 U.S. Dist. LEXIS 62787, 2009 WL 2232740, at *5 (W.D. Mich. July 22, 2009) (quoting *Casas Off. Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 675-76 (1st Cir. 1994)) ("'[I]t is well-established that joint tortfeasors and co-conspirators are generally not indispensable parties' because of joint and several liability.").

Robertson insists that the joint tortfeasor exception to joinder does not apply but offers no authority or understandable reasoning in support of her argument. ECF No. 127, PageID.2661. She contends that complete relief cannot be awarded without Williams. *Id.*, PageID.2658-2661. But as discussed, Robertson and Williams are jointly and severally liable, [*29] meaning that Evans can "satisfy [her] whole judgment by execution against any one of the multiple defendants who are liable to [her]." *Intercept Sec. Corp. v. Code-Alarm, Inc.*, 164 F.R.D. 215, 220 (E.D. Mich. 1995) (cleaned up). Robertson also suggests that she may be unable to obtain discovery

about Williams's involvement. ECF No. 127, PageID.2660. Yet if such discovery is relevant and proportional to the needs of the case, it may be obtained from non-parties under Rule 45.

Robertson contends that WCCC is indispensable because it "is the custodial control/provenance interests of its own proceedings," so "any adjudication regarding the 'unlawful' dissemination of its records—or the enforcement of an injunction against their use—requires the Court's participation." *Id.*, PageID.2652. But the copyright claim should be dismissed, rendering the purported basis for joining the WCCC moot.

Robertson's motion to dismiss under Rule 19 should thus be denied.

## IV. Conclusion

The Court thus **RECOMMENDS** that Robertson's motion to dismiss for lack of jurisdiction and failure to state a claim be **GRANTED IN PART AND DENIED IN PART** (ECF No. 77) and that Robertson's motion to dismiss for failure to join parties be **DENIED** (ECF No. 127). The sole remaining claim would be Evans's defamation claim based [*30] on Robertson's and Williams's alleged LARA complaints.

/s/ Elizabeth A. Stafford

ELIZABETH A. STAFFORD

United States Magistrate Judge

Dated: February 9, 2026

---

**End of Document**

# EXHIBIT B

*Stringer v. Richard*, No. 4:21-cv-00632, 2022 U.S. Dist. LEXIS 142968 (N.D. Ohio Aug. 10, 2022)

# Stringer v. Richard

United States District Court for the Northern District of Ohio

August 10, 2022, Decided; August 10, 2022, Filed

CASE NO. 4:21-cv-00632

**Reporter**
2022 U.S. Dist. LEXIS 142968 *; 2022 WL 3223800

GAIL STRINGER, et al., Plaintiffs, v. DAWN RICHARD, et al., Defendants.

**Subsequent History:** Summary judgment granted by Stringer v. Richard, 2022 U.S. Dist. LEXIS 149572, 2022 WL 3577413 (N.D. Ohio, Aug. 19, 2022)

Motion granted by, in part, Costs and fees proceeding at Stringer v. Richard, 2023 U.S. Dist. LEXIS 122818, 2023 WL 4556783 (N.D. Ohio, July 17, 2023)

Motion denied by Stringer v. Richard, 2023 U.S. Dist. LEXIS 139143 (N.D. Ohio, Aug. 9, 2023)

**Counsel:** [*1] For Gail Nevels Stringer, Debra Nevels Jordan, Venice Nevels Andrews, Eddie Howard, Plaintiffs: George C. Geddes, Bedford, OH.

Dawn Angelique Richard, Defendant, Pro se, Oceanside, CA.

**Judges:** JAMES S. GWIN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** JAMES S. GWIN

## Opinion

OPINION & ORDER

[Resolving Docs. 39; 41]

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs Gail Stringer, Debra Jordan, Venice Andrews, and Eddie Howard sue Defendants Dawn Richard and Derek Bergheimer for copyright infringement, violation of publicity, and invasion of privacy.[1]

After Defendant Richard moved for summary judgment, Plaintiffs moved this Court for leave to register a sound recording with the United States Copyright Office and then supplement their pleadings.[2] Defendant Richard opposed Plaintiffs' motion for leave, and in turn moved to strike the affirmation attached to Plaintiffs' motion for leave.[3]

---

[1] Doc. 1.

[2] Doc. 39.

[3] Doc. 41.

For the following reasons, this Court **DENIES** Plaintiffs' motion for leave and GRANTS Defendant's motion to strike.

## I. Background

Plaintiffs Gail Nevels Stringer, Debra Nevels Jordan, and Venice Nevels Andrews perform gospel music together as The Nevel Sisters. Plaintiff Eddie Howard sometimes appears with the group. Defendant Dawn Richard [*2] is also a performer.

Plaintiffs sued Defendant Richard for copyright infringement, violation of publicity, and invasion of privacy.[4] Plaintiffs say Defendant illegally used parts of the recording of Plaintiffs' copyrighted song, "Abundance of Rain," in Defendant's song, "Sauce." Specifically, Plaintiffs say Defendant used the refrain harmony "Let it fall on me." Plaintiffs say Defendant's use of their song without their authorization caused Plaintiffs to lose goodwill within the gospel music industry.

Defendant Richard moved for summary judgment. Defendant does not challenge that Plaintiff registered an "Abundance of Rain" composition, but argues that Plaintiffs' copyright claims fail because Plaintiffs never registered the sound recording "Abundance of Rain" with the United States Copyright Office.[5] Plaintiffs now move the Court for leave to register the sound recording and then supplement their pleadings to include claims based on the newly created registration.[6] Defendant opposes Plaintiff's request and also moves to strike the affirmation attached to Plaintiffs' motion.[7]

## II. Discussion

### A. Plaintiffs' Motion for Leave

Under Rule 15(d), the court may, "[o]n motion and reasonable notice . . . permit [*3] a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."[8] "The court may permit supplementation even though the original pleading is defective in stating a claim or defense."[9] Further, under Rule 6(b)(1)(B) the court may, for good cause, "extend the time that an act must be done on motion made after the time has expired if the party failed to act because of excusable neglect."[10]

[4] Doc. 1.

[5] Docs. 36; 36-1.

[6] Doc. 39.

[7] Doc. 41.

[8] Fed. R. Civ. P. 15(d).

[9] *Id.*

[10] Fed. R. Civ. P. 6(b)(1)(B).

The Sixth Circuit says that the following factors are relevant to the decision whether to grant leave to amend a pleading:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.[11]

"When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier."[12]

Plaintiffs [*4] seek leave from this Court to file the sound recording registration for "Abundance of Rain" with the United States Copyright Office.[13] Plaintiffs then seek to supplement their pleadings with the sound recording registration. Plaintiffs say this will correct a "paperwork technicality," and that granting leave and Plaintiffs' motion to amend will not be "dilatory or prejudice the Defendant."[14]

The Court disagrees. During the initial case conference, this Court set a January 28, 2022 cut-off for amendments to the complaint.[15] The original dispositive motion deadline in the case was May 9, 2022.[16] Although the Court ultimately extended this deadline to June 20, 2022, Defendant moved for summary judgment—and raised the fact that Plaintiffs did not hold a sound recording registration for the work at issue—on May 9.[17] Plaintiffs then filed the instant motion for leave and to amend pleadings on May 23, 2022.[18]

Granting Plaintiffs' motion at this advanced point in the case would cause delay and prejudice to Defendant. Both parties have completed substantial discovery and Defendant's motion for summary judgment is fully briefed. Further, Plaintiffs knew, or should have known, that they did not hold [*5] the sound recording registration for "Abundance of Rain" at the time they filed this suit and included a sound recording copyright infringement claim.

---

[11] *Bridgeport Music, Inc. v. Dimension Films*, 383 F.3d 390, 402 (6th Cir. 2004) (quoting *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)).

[12] *Wade v. Knoxville Utilities Bd*., 259 F.3d 452, 459 (6th Cir. 2001).

[13] Doc. 39.

[14] *Id.* at 3-4.

[15] Doc. 22.

[16] *Id.*

[17] Doc. 36.

[18] Doc. 39.

Further, copyright registration is necessary before remedies for copyright infringement can be sought through a federal court lawsuit.[19] While an author gains "exclusive rights" in her work immediately upon the work's creation, before pursuing an infringement claim in court, a copyright claimant must comply with § 411(a)'s requirement that "registration of the copyright claim has been made."[20] Registration has been made "when the Copyright Office registers a copyright."[21]

Plaintiffs did not comply with this requirement before filing this suit. Many district courts have found that allowing a Plaintiff to amend its complaint to satisfy the registration requirement of the Copyright Act would run contrary to the Supreme Court's interpretation of § 411(a).[22] Therefore, Plaintiffs' motion for leave and to amend pleadings is denied.

## B. Defendant's Motion to Strike

Plaintiffs attached an "Affirmation Under Oath" to the motion for leave and to amend pleadings.[23] Defendant moved to strike this affirmation. [*6] [24] Defendant says the affirmation bears no relevance upon the Plaintiffs' motion and the information contained in the affirmation is private. Further, the affirmation is unsigned and not notarized.

For the reasons given in her motion, Defendant's request to strike the affirmation is granted.

## III. Conclusion

For the foregoing reasons, this Court **DENIES** Plaintiffs' motion for leave and **GRANTS** Defendant's motion to strike.

---

[19] 17 U. S. C. § 411(a). *See, e.g., Sony/ATV Music Pub. LLC v. D.J. Miller Music Distributors, Inc.*, No. 3:09-CV-01098, 2010 U.S. Dist. LEXIS 103795, 2010 WL 3872802, at *4 (M.D. Tenn. Sept. 28, 2010); *TreadmillDoctor.com v. Johnson*, No. 08-2877, 2011 U.S. Dist. LEXIS 34652, 2011 WL 1256601, at *4 (W.D. Tenn. Mar. 31, 2011) ("When a plaintiff files a copyright infringement action before preregistration or registration of the copyright claim has occurred, the 'precondition' required by § 411(a) is not satisfied.").

[20] 17 U.S.C. §§ 106; § 411(a); *Eldred v. Ashcroft*, 537 U.S. 186, 195, 123 S. Ct. 769, 154 L. Ed. 2d 683 (2003); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887, 203 L. Ed. 2d 147 (2019).

[21] *Fourth Est. Pub. Benefit Corp.*, 139 S. Ct. at 887.

[22] *See, e.g., Cortes-Rramos v. Martin-Morales*, 2020 U.S. Dist. LEXIS 152384, 2020 WL 4920045, at *4 (D.P.R. Aug. 21, 2020); *Ambrosetti v. Oregon Catholic Press*, 458 F. Supp. 3d 1013, 2020 WL 2219172, at *5 (N.D. Ind. 2020); *Nina Rawls v. Paradise Artists, Inc.*, No. 3:18-cv-0417, 2020 U.S. Dist. LEXIS 53818, 2020 WL 1493610, at *5 (M.D. Tenn. Mar. 27, 2020); *UAB "Planner 5D" v. Facebook, Inc.*, No. 19-cv-03132-WHO, 2019 U.S. Dist. LEXIS 203618, 2019 WL 6219223, at *7 (N.D. Cal. Nov. 21, 2019) ("A plaintiff cannot cure its failure to meet the preconditions set forth in 17 U.S.C. § 411(a) by amending its pending complaint."); *Xclusive-Lee, Inc. v. Hadid*, No. 19CV520PKCCLP, 2019 U.S. Dist. LEXIS 119868, 2019 WL 3281013, at *4 (E.D.N.Y. July 18, 2019); *Mai Larsen Designs v. Want2Scrap, LLC*, No. SA-17-CV-1084-ESC, 2019 U.S. Dist. LEXIS 92215, 2019 WL 2343019, at *6 (W.D. Tex. June 3, 2019); *Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 U.S. Dist. LEXIS 56578, 2019 WL 1454317, at *2 (S.D.N.Y. Apr. 2, 2019).

[23] Doc. 39 at 6.

[24] Doc. 41 at 8.

IT IS SO ORDERED.

Dated: August 10, 2022

*/s/ James S. Gwin*

JAMES S. GWIN

UNITED STATES DISTRICT JUDGE

---

**End of Document**

# EXHIBIT C

*Rawls v. Paradise Artists, Inc*, No. 3:18-0417, 2020 U.S. Dist. LEXIS 53818 (M.D. Tenn. Mar. 27, 2020)

# Rawls v. Paradise Artists, Inc

United States District Court for the Middle District of Tennessee, Nashville Division

March 27, 2020, Filed

No. 3:18-0417

**Reporter**

2020 U.S. Dist. LEXIS 53818 *; 2020 WL 1493610

NINA RAWLS v. PARADISE ARTISTS, INC. and THE ORCHARD ENTERPRISES, INC.

**Prior History:** Rawls v. Paradise Artists, Inc., 2018 U.S. Dist. LEXIS 232859 (M.D. Tenn., Sept. 25, 2018)

**Counsel:** [*1] For Nina Rawls individually and as sole successor trustee of the Lou and Nina Rawls Trust, Plaintiff: Vincent H. Peppe, Attorney at Law, Nashville, TN.

For Paradise Artists, Inc., Defendant: Lawrence C. Noble, Port Hueneme, CA; Michael J. Sandler, Sr., Law Office of Michael J. Sandler, Sr., Nashville, TN.

For The Orchard Enterprises, Inc., Defendant: Michael J. Sandler, Sr., Law Office of Michael J. Sandler, Sr., Nashville, TN.

**Judges:** BARBARA D. HOLMES, United States Magistrate Judge.

**Opinion by:** BARBARA D. HOLMES

## Opinion

**MEMORANDUM OPINION AND ORDER**

Currently pending before the Court is Defendants' motion to dismiss (Docket Entry ("DE") 83), to which Plaintiff has filed a response. (DE 86.) Defendants have also filed a reply to Plaintiff's response. (DE 88.) Also pending is Plaintiff's related motion requesting that the Court take judicial notice of a copyright registration (DE 87), to which Defendants have filed a response. (DE 89.) This action is before the Magistrate Judge for all further proceedings pursuant to the consent of the parties and referral of the District Judge in accordance with 28 U.S.C. § 636(c). (DE 97.)

For the reasons that follow, Defendants' motion to dismiss (DE 83) is GRANTED IN PART and Plaintiff's motion for [*2] judicial notice (DE 87) is DENIED AS MOOT. As a result, this action is DISMISSED WITHOUT PREJUDICE.

### I. STATEMENT OF THE CASE

Plaintiff Nina Rawls ("Plaintiff" or "Ms. Rawls") is the widow of recording artist Lou Rawls ("Mr. Rawls").[1] Plaintiff, as the sole trustee of the Lou and Nina Rawls Trust ("Trust"), has asserted multiple claims against Defendants Paradise Artists, Inc. ("Paradise Artists") and The Orchard Enterprises NY, Inc. ("Orchard") (collectively referred to as "Defendants") for the unauthorized use of three works: (1) *Seasons 4 U*, an album recorded by Mr. Rawls in 1998; (2) *Rawls Sings Sinatra*, an album recorded by Mr. Rawls in 2003; and (3) a collection of photographs taken by photographer Bonnie Schiffman in 2003 in connection with the *Rawls Sings Sinatra* album ("the 2003 photographs").

The *Seasons 4 U* album was released by Rawls and Brokaw Records ("Rawls and Brokaw"), a company co-owned by Mr. Rawls and his manager. Counsel for Plaintiff obtained copyright registration for the *Seasons 4 U* album in Plaintiff's name on July 24, 2018, almost three months after the instant lawsuit was commenced, the certificate of which is attached to the third amended complaint. (DE 78 [*3] at 17-19.)[2] Later, on November 5, 2018, counsel for Plaintiff registered the copyright for *Seasons 4 U* in the name of the Trust.

Mr. Rawls registered the copyright for the *Rawls Sings Sinatra* album in 2003. Counsel for Plaintiff obtained copyright registration for this album in the name of the Trust on November 1, 2018, approximately six months after the commencement of the instant lawsuit.

Copyright registration for the 2003 photographs was completed and issued to Mr. Rawls on June 10, 2004.

The agreement governing the Trust ("Trust agreement") was executed by Mr. Rawls and Plaintiff on March 10, 2005. That same day, Mr. Rawls and Plaintiff executed a "Grant and Assignment" that assigned all of their "separate and community property" to the Trust.[3] The Trust agreement contains an intellectual property rights provision that states in relevant part:

> [T]he Trustors hereby declare that they hereby transfer to the Trust all of the Trustors' right, title and interest in and to either Trustor's name, sobriquet, voice, signature, photograph, actual or simulated likeness, image and other personal identification, any and all trademarks, trade names, trade dress, service marks and other [*4] personal identifiers, all applications and registrations thereof and all goodwill symbolized thereby, all rights of publicity, all copyrights, copyright registrations and rights to renew, extend, cause reversion of or to terminate any grant of such copyright, and all rights arising under or out of any of the foregoing[.]

---

[1] These facts are drawn from Plaintiff's third amended complaint. (DE 78.) For reasons delineated in the Court's previous order, the title "third amended complaint" is actually a misnomer. (DE 77 at 1, n.1.) However, because the operative pleading is labeled as the "third amended complaint" (*see* DE 78) and the parties continue to reference the document as such, the Court will similarly do so.

[2] Plaintiff alleges in the third amended complaint that Mr. Rawls "obtained a copyright registration in the [*Seasons 4 U*] album" in 1998 (DE 78 at ¶ 9), but admits in her response that the copyright was not registered until after commencement of the instant lawsuit. (DE 86 at 6.) As noted by Defendants, Plaintiff's allegations have been less than consistent throughout the course of this litigation.

[3] A copy of this agreement is attached to the third amended complaint. (DE 78 at 20-22.)

On May 31, 2005, Paradise Artists entered into a "Music Service Agreement" with Orchard to distribute sound recordings to various digital musical platforms. Pursuant to this agreement, the *Seasons 4 U* album was distributed to 96 digital platforms while *Rawls Sings Sinatra* was distributed to 95 digital platforms.

On January 5, 2006, one day before his death, Mr. Rawls executed his Last Will and Testament, which directed in relevant part that "all of the rest, residue and remainder of my estate" is bequeathed to "the then acting Trustee or Trustees" of the Trust.[4] On January 9, 2006, Plaintiff executed a "Notice of Acceptance of Trusteeship" that memorialized her status as the successor sole trustee of the Trust.

In February of 2018, Plaintiff discovered that the *Seasons 4 U* and *Rawls Sings Sinatra* albums were available on numerous digital musical platforms, including iTunes [*5]  and Spotify. The *Rawls Sings Sinatra* album was advertised using one of the 2003 photographs. Paradise Artists and Orchard were responsible for distribution of these albums to the various digital platforms.

Plaintiff asserts four claims against Paradise Artists: (1) copyright infringement for unauthorized licensing of both albums to Orchard for digital distribution; (2) copyright infringement for unauthorized use of the 2003 photographs; (3) violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), for unauthorized use of Mr. Rawls' name in connection with the unauthorized licensing of both albums; and (4) violation of Tennessee's right of publicity, Tenn. Code Ann. § 47-25-1103, for unauthorized use of Mr. Rawls' name and photographs in connection with the unauthorized licensing of both albums.

Plaintiff asserts five claims against Orchard: (1) copyright infringement for unauthorized digital distribution of *Seasons 4 U*; (2) copyright infringement for unauthorized digital distribution of *Rawls Sings Sinatra*; (3) copyright infringement for unauthorized use of the 2003 photographs; (4) violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), for unauthorized use of Mr. Rawls' name in connection with the unauthorized distribution of both albums; and (5) violation [*6]  of Tennessee's right of publicity, Tenn. Code Ann. § 47-25-1103, for unauthorized distribution of both albums.

Based on these claims, Plaintiff seeks preliminary and permanent injunctions prohibiting Defendants from further infringement of Plaintiff's intellectual property rights, actual damages pursuant to 17 U.S.C. § 504(b), or, alternatively, statutory damages pursuant to 17 U.S.C. § 504(c), as well as costs and attorney's fees pursuant to 17 U.S.C. § 505.

Defendants seek dismissal on various grounds, including under Rule 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim. Plaintiff opposes Defendants' motion to dismiss.

## II. STANDARD OF REVIEW

[4] A copy of the will is also attached to the third amended complaint. (DE 78 at 32-47.)

### A. Dismissal for Lack of Subject Matter Jurisdiction

A motion that alleges lack of standing under Rule 12(b)(1) is properly characterized as a motion seeking dismissal for lack of subject matter jurisdiction. *Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, 353 F. Supp. 3d 678, 686-87 (M.D. Tenn. 2018). Such a motion can attack the claim of jurisdiction on its face, or, alternatively, attack the factual basis for jurisdiction. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). A motion representing a facial attack challenges only "the sufficiency of the pleadings" and is treated akin to a Rule 12(b)(6) motion, thus requiring the court to accept as true all allegations made by the plaintiff. *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (internal citation omitted).

### B. Dismissal for Failure to State a Claim

To survive a motion to dismiss [*7] under Rule 12(b)(6), the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)). When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff[] [and] accept all well-pleaded factual allegations as true[.]" *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017)).

Matters outside of the pleadings are generally not considered when ruling on a Rule 12(b)(6) motion to dismiss. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citation omitted). However, the court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to dismiss into a motion for summary judgment. *Id.* at 680-81 (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

While generally prohibited from considering matters outside the pleadings in ruling on a motion to dismiss, the court may consider materials that are "appropriate for the taking of judicial notice" under Rule 201 of the Federal Rule of Evidence. *In re Unumprovident Corp. Secs. Litig.*, 396 F. Supp. 2d 858, 875 (E.D. Tenn. 2005) (citing *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360-61 (6th Cir. 2001)). Rule 201 permits the Court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either (1) "generally known [*8] within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined by sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may take such action on its own, but "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

## III. ANALYSIS

Because standing represents a "threshold question" in any federal case, *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007), the Court must initially determine whether Plaintiff has standing to sue. The Copyright Act provides that the "legal or beneficial" owner of an exclusive right is entitled to "institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). To have standing under this provision, the party bringing suit "must have some ownership rights over at least part of the exclusive right for which he wishes to sue." *Warner/Chappell Music, Inc. v. Blue Moon Ventures*, No. 3:10-cv-1160, 2011 U.S. Dist. LEXIS 14886, 2011 WL 662691, at *3 (M.D. Tenn. Feb. 14, 2011). Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing standing. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

Defendants contend that Plaintiff has failed to allege sufficient facts to establish standing. Defendants argue that Plaintiff cannot proceed with any claims [*9] related to the *Rawls Sings Sinatra* album since the associated copyright was not registered to the Trust until November 1, 2018, several months after the initial complaint was filed. As noted by Plaintiff, however, section 411(a) does not require that the party bringing the infringement claim be the same individual or entity that registered the work. *See Huthwaite, Inc. v. Sunrise Assisted Living, Inc.*, 261 F. Supp. 2d 502, 508-09 (E.D. Va. 2003) ("[T]he plaintiff in court obviously need not be the same party who initially registered the subject work.") (internal citation omitted). *See also Tang v. Hwang*, 799 F. Supp. 499, 503-04 (E.D. Pa. 1992) ("There is no requirement under [17 U.S.C. § 411(a)] that the only person who may bring an action is the person who applies for the copyright registration. The law merely provides that there must be registration of the copyright claim, pursuant to the Copyright Act, before an action may be instituted."). Defendants cite no authority to the contrary. Because Plaintiff alleges that *Rawls Sings Sinatra* was registered in 2003 and the rights thereof were later transferred to her, she has standing to sue for copyright infringement.

The same reasoning applies to the 2003 photographs. The third amended complaint alleges that these photographs were registered on June 10, 2004 and subsequently became the property of the Trust in [*10] March of 2005.[5] Plaintiff was not required to register the photographs in the name of the Trust prior to commencing the instant lawsuit, therefore she has standing to pursue claims for copyright infringement as to those works. For these reasons, Defendants' standing arguments as to these two works fail.

Defendants do not clearly delineate whether they seek to dismiss Plaintiffs infringement claims related to the *Seasons 4 U* album for lack of standing or failure to state a claim. References to that work are interspersed throughout Defendants' arguments for dismissal on both these grounds. To the extent that Defendants assert Plaintiff's lack of standing to pursue infringement claims as to the *Seasons 4 U* album, that argument appears to be based on Plaintiff's failure to demonstrate that she obtained copyright registration for *Seasons 4 U* in 1998. Defendants argue that, because Plaintiff provides only registration numbers for *Seasons 4 U* that were issued after

[5] The 2003 photographs are the subject of Plaintiff's motion for judicial notice (*see* DE 87), which, for the reasons outlined in this memorandum opinion, is denied as moot. For purposes of the instant motion to dismiss, however, the Court assumes registration was completed on June 10, 2004.

the commencement of this action, her complaint fails to comply with 17 U.S.C. § 411(a)'s requirement that "preregistration or registration" of the copyright be made prior to bringing any lawsuit for infringement of the copyright. Although (perhaps) [*11] framed as a standing question, compliance with section 411 is not a jurisdictional requirement. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166-67, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010) (concluding that the copyright registration requirement of section 411(a) is a pleading requirement, not a jurisdictional one).[6] The proper analysis is whether Plaintiff has adequately stated a claim for relief, specifically whether the pleadings sufficiently demonstrate prefiling compliance with section 411(a).

Plaintiff acknowledges the Supreme Court's recent decision in *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, which holds that registration for purposes of 17 U.S.C. § 411(a) has been made "not when an application for registration is filed, but when the Register has registered a copyright after examining a properly filed application." __ U.S. __, 139 S. Ct. 881, 892, 203 L. Ed. 2d 147 (2019). Plaintiff concedes that she did not obtain copyright registration of *Seasons 4 U* until after commencement of the lawsuit but notes that numerous courts have held that submission of an amended complaint after registration is completed alleviates any pleading deficiencies. However, each of the cases cited by Plaintiff predates the *Fourth Estate* decision, which, contrary to Plaintiff's argument otherwise, impacts the Court's analysis given that numerous cases decided after [*12] *Fourth Estate* hold that an amended complaint cannot fix the defect caused by a claimant's failure to obtain copyright registration prior to filing suit. *See, e.g., UAB "Planner 5D" v. Facebook, Inc.*, No. 19-cv-03132-WHO, 2019 U.S. Dist. LEXIS 203618, 2019 WL 6219223, at *7 (N.D. Cal. Nov. 21, 2019) ("A plaintiff cannot cure its failure to meet the preconditions set forth in 17 U.S.C. § 411(a) by amending its pending complaint."); *Xclusive-Lee, Inc. v. Hadid*, No. 19-CV-520-PKCCLP, 2019 U.S. Dist. LEXIS 119868, 2019 WL 3281013, at *4 (E.D.N.Y. July 18, 2019) (declining to grant claimant leave to amend complaint involving copyright that had not yet been registered); *Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 U.S. Dist. LEXIS 93568, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019) (denying Plaintiff's attempt to amend complaint to cure its failure to register copyright before suing);[7] *Mai Larsen Designs v. Want2Scrap, LLC*, No. SA-17-CV-1084-ESC, 2019 U.S. Dist. LEXIS 92215, 2019 WL 2343019, at *6 (W.D. Tex. June 3, 2019) ("To adopt [plaintiff's] reasoning the Court would have to hold that *Fourth Estate* allows a plaintiff to file a lawsuit before copyright registrations have been awarded and to amend the pleadings after registration is obtained, so long as the effective date (i.e., the date of application) predates the filing of the lawsuit. The Court cannot square this argument with the holding of *Fourth Estate*."); *Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 U.S. Dist. LEXIS 56578, 2019 WL 1454317, at *2 (S.D.N.Y. Apr. 2, 2019) ("Plaintiff's argument would make a meaningless formality out of *Fourth Estate*'s requirement that an application be approved prior to filing suit. [*13] Were it

---

[6] Nothing in the Supreme Court's decision in the *Fourth Estate* case discussed in more detail below changes its earlier decision in *Reed Elsevier* that section 411 compliance is not a jurisdictional prerequisite.

[7] Like Plaintiff in this matter, the claimant in *Izmo* cited the court's decision in *Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022 (N.D. Cal. 2003), to argue that the filing of an amended complaint after registration was complete satisfied section 411(a), which prompted the *Izmo* court to question whether *Zito* "remains good law in light of the Supreme Court's" *Fourth Estate* decision. *Izmo*, 2019 U.S. Dist. LEXIS 93568, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019).

correct, a plaintiff could file suit at any time, notwithstanding Section 411(a)'s precondition, and simply update the complaint when registration finally occurred.") Indeed, the Court agrees with the reasoning of these decisions and finds that Plaintiff's post-complaint registration of *Seasons 4 U* fails to comply with 17 U.S.C. § 411(a).

What must the Court then do upon finding that only two of the three works at issue in this lawsuit satisfy section 411(a)'s registration requirement? In *Fourth Estate*, the Supreme Court concluded that the registration requirement is "akin to an administrative exhaustion." *Fourth Estate*, 139 S. Ct. at 887. *See also Reed Elsevier, supra* at 165-66 (comparing section 411(a) to "Title VII's requirement that sex-discrimination claimants timely file a discrimination charge with the EEOC"). In other areas of law, failure to exhaust administrative remedies generally results in dismissal without prejudice. *See, e.g., Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (holding that claims brought under Prison Litigation Reform Act that did not meet administrative exhaustion requirement should be dismissed without prejudice); *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 344 (6th Cir. 2000) (dismissal without prejudice appropriate when dismissing an ERISA action solely for failure to exhaust administrative remedies); *Thomas v. Grinder & Haizlip Const.*, 547 F. Supp. 2d 825, 829 (W.D. Tenn. 2007) ("Dismissal without prejudice is generally [*14] the appropriate remedy for a Title VII claim filed prematurely before administrative remedies are exhausted.") (internal citation omitted). This is consistent with the post-*Fourth Estate* cases from other districts cited above, all of which except one resulted in dismissal without prejudice of copyright infringement claims brought before registration was completed.[8]

The body of law that has emerged in the wake of *Fourth Estate* strongly suggests that allowing the claims related to *Seasons 4 U* to proceed, despite successful registration of the associated copyright following commencement of this action, would "undermine the objectives animating" the *Fourth Estate* holding. *Izmo*, 2019 U.S. Dist. LEXIS 93568, 2019 WL 2359228, at *2. Although there is some appeal to dismissing only the *Seasons 4 U* claims and allowing the remaining infringement claims to proceed, the Court does not find a tenable outcome in dismissal of the *Seasons 4 U* claims without prejudice and not of the claims for the other two works. *See id.* ("The fact that [plaintiff] properly 'commenced' this lawsuit as to *some* of its copyrights does not excuse its failure to comply with § 411(a) as to its other copyrights.") (emphasis in original).[9]

---

[8] The court in *Xclusive-Lee, Inc. v. Hadid* did not explicitly dismiss the subject plaintiff's copyright claims with prejudice, but instead "declined to grant Plaintiff leave to amend the complaint to allege registration should its copyright application be approved in the future." 2019 U.S. Dist. LEXIS 119868, 2019 WL 3281013, at *4. This is distinct from the instant matter, in which Plaintiff achieved registration after filing her initial complaint but before filing the first amended complaint. Further, the court in *Xclusive-Lee* appeared to contemplate that the plaintiff in that case might file a new action after being formally granted a registered copyright. *Id.*, n.8

[9] The Court acknowledges its statements in a previous, non-dispositive order on Plaintiff's motion to amend suggesting that the interests of judicial economy would be best served by simply allowing Plaintiff to amend her complaint to comply with section 411(a) following successful registration of the *Seasons [*15] 4 U* copyright. (DE 77 at 7-9). As a purely practical outcome, that may well still be supportable. However, in this instance at least practicalities yield to the law. And it is not clear that all the holdings relied upon in resolution of the motion to amend remain good law, at least as they pertain to the registration requirement, and particularly considering the substantial body of law that has developed following *Fourth Estate* (and following resolution of the motion to amend). Further, and more importantly, in ruling on the motion to amend, the Court expressly noted

The Court recognizes the procedural quandary implicated by this result. Outright dismissal of the third amended complaint without prejudice will likely result in a newly filed lawsuit, which will then require the parties to retrace their steps of almost two years only to arrive at essentially the same place. The idea of such procedural hoop jumping certainly offends the Court's sense of judicial economy. However, a partial dismissal of only the infringement claims related to *Seasons 4 U* might also result in Plaintiff simply refiling an action based solely on infringement related to *Seasons 4 U*, at which point there would be two federal lawsuits involving the same parties and the same underlying set of facts, and no savings of judicial or other resources there either. On balance, dismissal of all Plaintiff's infringement claims without prejudice represents the best measured resolution.

For all these reasons, the Court therefore opts for compliance with *Fourth Estate*, and because Plaintiff initiated this action without satisfying 17 U.S.C. § 411(a) as to all subject works, concludes the action cannot proceed. Dismissal of the third amended complaint without prejudice is the appropriate [*16] outcome. *See Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 31, 110 S. Ct. 304, 107 L. Ed. 2d 237 (1989) ("[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."). *See also Blue Book Servs., Inc. v. Farm Journal, Inc.*, No. 18-cv-07155, 2020 U.S. Dist. LEXIS 12727, 2020 WL 419405, at *6 (N.D. Ill. Jan. 27, 2020) ("This Court will not disregard the procedural requirements specified by the legislature; failure to comply with § 411(a) requires dismissal of this case, albeit without prejudice[.]").

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (DE 83) is GRANTED IN PART and the instant action is DISMISSED WITHOUT PREJUDICE.[10]

It is SO ORDERED.

/s/ Barbara D. Holmes

BARBARA D. HOLMES

United States Magistrate Judge

---

**End of Document**

---

that it was not deciding Defendants' argument that Plaintiff's amendment was futile because of continuing defects in copyright registration. (*Id.* at 6.) To have resolved that issue would have required an analysis under Rule 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000) ("[A] proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss."). The Court declined to undertake that analysis for the reasons stated in the order. (DE 77 at 6-7.) Thus, there was no decision on the issues raised in the instant motion to dismiss. Now the Court has fully considered whether the third amended complaint can survive dismissal under Rule 12(b)(6) and concludes that under controlling and applicable law it cannot.

[10] Because this action is dismissed based on Plaintiff's failure to comply with prefiling registration requirement of section 411, the Court need not address the remaining arguments in Defendants' motion.